UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-22437-BLOOM/OTAZO-REYES

IN RE: PETRUS ADVISERS INVESTMENTS FUND, L.P.,
by its General Partner, PETRUS ADVISERS INVESTMENTS
GENERAL PARTNER, INC.,

    Petitioner.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Respondents Starwood Capital Group Management L.L.C., BSS SCG GP Holdings L.L.C., Starwood Capital Group Holdings GP L.L.C., SCGG II GP, L.L.C., Starwood Capital Group Global II L.P., Starwood XI Management, L.P., and Starwood XI Management GP, L.L.C.'s (collectively, "Respondents" or "Starwood Entities") Motion to Vacate Order Granting Section 1782 *Ex Parte* Application (hereafter, "Motion to Vacate") or, in the alternative, to Quash Subpoenas (hereafter, "Motion to Quash") (together, "Motion") [D.E. 6]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 8]. The undersigned held a hearing on this matter on December 6, 2022 (hereafter, "Hearing"). See Paperless Minute Entry [D.E. 21]. For the reasons stated below, the undersigned respectfully recommends that Respondents' Motion be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 2, 2022, Petitioner Petrus Advisers Investments Fund, L.P. ("Petrus Fund" or "Petitioner"), by its General Partner, Petrus Advisers Investments General Partner, Inc. ("Petrus General Partner"), filed an *Ex Parte* Application for Judicial Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (hereafter, "Section 1782 Application") [D.E. 1]. Therein, Petitioner requested an order permitting it to "obtain documentary and

testimonial discovery from individuals and entities within [this district] for use in three related foreign proceedings pending before the Commercial Court in Vienna, Austria". Id. at 1. Specifically, Petitioner sought records and testimony from Starwood Capital Group Management L.L.C. ("Starwood Capital") and its affiliates (BSS SCG GP Holdings L.L.C., Starwood Capital Group Holdings GP L.L.C., SCGG II GP, L.L.C., Starwood Capital Group Global II L.P., Starwood XI Management, L.P., and Starwood XI Management GP, L.L.C.) in connection with Starwood Capital's ownership of SOF-11 Klimt CAI S.a.r.l ("SOF-11"), the majority shareholder of an Austrian corporation, CA Immobilien Anlagen AG ("CA Immobilien"), and SOF-11's alleged "numerous illegal actions to prefer [Starwood Capital's] interests at the expense of [CA Immobilien] and its shareholders overall." Id. at 2. Petitioner, a minority shareholder of CA Immobilien, initially sought to serve "substantially identical [subpoenas] . . . addressed to" the Starwood Entities and "their named or designated corporate representatives within [this district]". Id. at 11. However, Petitioner only attached a sample subpoena as Exhibit A to the Section 1782 Application [D.E. 1-2] and expected that the Starwood Entities would identify the relevant deponents after service of the subpoenas so that the parties could proceed with a "sub-set" of depositions. Id.

On August 3, 2022, the Court granted Petitioner's Section 1782 Application and "authorized [it] to issue and serve the proposed subpoenas in the form described in the Application and attached to the Application [as Exhibit A] upon the [Starwood Entities]". See Order on *Ex Parte* Application [D.E. 3 at 1].

On September 19, 2022, the Starwood Entities filed their Motion, arguing that: (1) Petitioner had failed to satisfy two of the four requirements set forth in Section 1782 for obtaining the requested discovery; and (2) the discretionary factors articulated in Intel Corp.

v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) also weigh against permitting said discovery, thereby warranting vacatur of the Court's Order on *Ex Parte* Application [D.E. 3]. See Motion [D.E. 6 at 10–21].  Alternatively, the Starwood Entities request that Petitioner's seven (7) Corporate Representative Subpoenas and seven (7) Records Custodian Subpoenas be quashed for failure to comply with the Court's Order on *Ex Parte* Application [D.E. 3] and Federal Rules of Civil Procedure 26 and 45.  Id. at 21–25.  On October 13, 2022, Petitioner filed its Response in Opposition to the Starwood Entities' Motion (hereafter, "Response") [D.E. 13]; and on October 31, 2022, the Starwood Entities filed their Reply in Support of their Motion (hereafter, "Reply") [D.E. 16].

On December 19, 2022, pursuant to an agreement reached by the parties at the Hearing, Petitioner and the Starwood Entities filed a Joint Stipulation on the Requests Identified in the Subpoenas Duces Tecum Served on Respondents (hereafter, "Joint Stipulation") [D.E. 22].[1] With regard to the Corporate Representative Subpoenas, the parties stipulated that:

> [A]ll of the Corporate Representative Subpoenas served on the Respondents would be revised to be identical to the exemplar subpoena attached to the Section 1782 application, see [D.E. 1-2], with the removal of the "Named Representatives" section and the deletion of the four individuals identified in that section. This would be without prejudice to [Petitioner's] right to request the Court to allow it to take [Federal Rule of Civil Procedure] 30(b)(1) representative depositions of the four individuals named in the "Named Representatives" section, to the extent any such request is not foreclosed by the Court's ruling on the Motion to Vacate, and without prejudice to the Respondents' right to raise whatever objections they deem necessary to any such future requests.
>
> …

---

[1] At the Hearing, Petitioner agreed to revisit its seven (7) Records Custodian Subpoenas and proceed only with the seven (7) Corporate Representative Subpoenas as modified per the parties' agreement, without prejudice to Petitioner's arguments as to the Records Custodian Subpoenas' compliance with the Court's Order on *Ex Parte* Application or its right to file a subsequent Section 1782 application.  Accordingly, at this juncture, the undersigned limits her analysis to Petitioner's seven (7) Corporate Representative Subpoenas and deems the seven (7) Records Custodian Subpoenas to have been temporarily withdrawn, without prejudice.

3

> [Petitioner] and Respondents further stipulate that the subpoenas duces tecum attached as Composite Exhibit "A" [D.E. 22-1] will be treated as served on the Respondents on August 12, 2022, the same date as service of the original subpoenas duces tecum.

See Joint Stipulation [D.E. 22 at 2–3]. Thus, the parties' Joint Stipulation moots the Starwood Entities' arguments regarding the Corporate Representative Subpoenas' technical compliance with the Court's Order on *Ex Parte* Application. Finally, on February 28, 2023, Petitioner filed a Notice of Supplemental Authority [D.E. 23]. Therefore, the Motion is ripe for adjudication.

## APPLICABLE LAW

To establish prima facie entitlement to judicial assistance under Section 1782,

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

In re Pons, No. 19-23236-MC, 2020 WL 1860908, at *2 (S.D. Fla. Apr. 13, 2020) (quoting In re Clerici, 481 F.3d 1324, 1331–32 (11th Cir. 2007)). "Even when all four statutory requirements are satisfied, 'a district court is not required to grant a [Section 1782] discovery application simply because it has the authority to do so.'" In re Ferrer, No. 18-20226-CIV, 2018 WL 3240010, at *3 (S.D. Fla. July 3, 2018) (citing Intel, 542 U.S. at 264). The Supreme Court in Intel identified the following additional factors to aid a court in its exercise of discretion:

> 1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for [Section 1782] aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; 2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; 3) "whether the [Section 1782] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and 4) whether the request is otherwise "unduly intrusive or burdensome."

In re Ferrer, 2018 WL 3240010, at *3 (quoting In re Clerici, 481 F.3d at 1334; Intel, 542 U.S. at 264–65).

**MOTION TO VACATE**

The Starwood Entities argue that Petitioner has not satisfied the first and third statutory factors set forth in Section 1782, namely: that Petitioner is an "interested person" within the meaning of Section 1782; and that the documents and testimony requested are "for use in" the Austrian proceedings. See Motion [D.E. 6 at 11–12]. The Starwood Entities further argue that all four Intel factors weigh against permitting Section 1782 discovery to proceed in this case. Id. at 12–21.

The undersigned first considers whether the Section 1782 Application satisfies the two statutory factors at issue; and then proceeds to consider whether the Intel factors militate against Petitioner's Section 1782 Application. As discussed below, the undersigned concludes that the Starwood Entities' arguments do not support granting the Motion to Vacate under either the statutory factors at issue or the Intel factors.

**A. Consideration of the first and third Section 1782 statutory factors does not support granting the Motion to Vacate.**

As previously noted, the Starwood Entities limit their challenge to the first and third statutory factors. The undersigned discusses these arguments in turn and finds no merit in them.

*1. Whether Petitioner is an "interested person" within the meaning of Section 1782.*

The Starwood Entities first contend that Petrus Fund, as Petitioner, is not an "interested person" because its "legal standing in the Austrian [p]roceedings is in question, and the Austrian Court has not yet decided the issue." See Motion [D.E. 6 at 11]. In response, Petitioner contends that, although the Vienna Commercial Court is presently considering whether Petrus Fund or Petrus General Partner should be the proper plaintiff in two of the Austrian proceedings, regardless

5

of the outcome on this issue, "the litigation will continue" and Petrus Fund has a "reasonable interest in obtaining the assistance" it requests. See Response [D.E. 13 at 7] (internal quotation marks omitted) (citing Declaration of Mag. Slavica Vanovac ("Ms. Vanovac") (hereafter, "Vanovac Declaration") [D.E. 13-4 ¶ 9]).[2]

As an initial matter, "a determination of [an applicant's] standing in a potential suit reaches further into the underlying merits of [the] claims than this [C]ourt is required to contemplate under Section 1782, and the merits of [those] claims are not to be heard and decided before this Court." In re Furstenberg Fin. SAS, No. 16-mc-60266, 2016 WL 10707012, at *3 (S.D. Fla. July 27, 2016) (citing Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262 (11th Cir. 2014)). Therefore, the undersigned need not consider Petrus Fund's or Petrus General Partner's standing in the Austrian proceedings to determine whether Petrus Fund, as Petitioner, is entitled to obtain the Section 1782 discovery it seeks in this district.

In any event, "an application under § 1782 plainly reaches beyond the universe of persons designated as 'litigant.'" In re England/Bahamas, No. 20-MC-61696, 2021 WL 3270074, at *3 (S.D. Fla. July 30, 2021) (quotation marks omitted) (quoting Intel, 542 U.S. at 256). Indeed, courts have recognized minority shareholders investigating corporate operations abroad as "interested persons" for purposes of Section 1782 discovery. See, e.g., Application of Furstenberg Fin. SAS v. Litai Assets LLC, 877 F.3d 1031, 1035 (11th Cir. 2017) (holding that applicant minority shareholders intending to initiate criminal foreign proceedings relating to ownership structure of corporation were "interested persons" within the meaning of Section 1782). Therefore, regardless of the Vienna Commercial Court's ruling on standing, Petrus Fund is an "interested person" by

---

[2] At the Hearing, Petitioner confirmed that there is no standing issue as to the third Austrian proceeding, in which Petrus General Partner is the plaintiff and its right to proceed is not being challenged. See also Vanovac Decl. [D.E. 13-4 ¶ 8].

virtue of its status as a minority shareholder in CA Immobilien whose majority shareholder's conduct is at issue in the Austrian proceedings.

Based on the foregoing analysis, the undersigned concludes that the first Section 1782 statutory factor is satisfied.

*2. Whether the requested discovery is "for use in" the Austrian proceedings.*

The Starwood Entities also argue that Petitioner's Section 1782 Application does not satisfy the statutory "for use" requirement because it "does not identify any procedural mechanism for [Petitioner] to use the U.S. discovery sought in the Austrian [p]roceedings." See Motion [D.E. 6 at 12] (quotation marks omitted); Reply [D.E. 16 at 6 n.3]. However, "the term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding." In re Bernal, No. 18-21951-MC, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018) (quotation marks omitted) (quoting In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017)).  Indeed, Petitioner satisfies this standard by proffering that the "the evidence sought by the subpoenas to the [Starwood Entities] is relevant to the claims in the foreign proceedings and [Petitioner] will use the evidence gathered here to support its claims and legal theories made in the Austrian litigation." See Section 1782 Application [D.E. 1 at 14].

Moreover, to the extent that the parties' experts dispute whether the evidence will be admissible in the Austrian proceedings, compare Vanovac Decl. [D.E. 13-4 ¶¶ 10–12, 17] with Declaration of Mmag. Dr. Christoph Diregger ("Mr. Diregger") (hereafter, "Diregger Declaration") [D.E. 6-3 ¶¶ 21, 27, 34], "[t]he Court need not discuss these differences of opinion in any depth [as] in the end [the Court] is left without an answer as to which expert is correct." In re Bernal, 2018 WL 6620085, at *5 (quotation marks omitted) (quoting In re Sergeeva, No. 13-cv-

7

03437, 2013 WL 12169388, at *4 (N.D. Ga. Nov. 22, 2013)); see also In re Pimenta, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) ("The Court will not attempt to conduct a detailed analysis of foreign law, but rather focuses primarily on fostering the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts."). Thus, Petitioner's proffer that the evidence it seeks would be considered by the judges in the Austrian proceedings and that Austrian law does not prohibit a party from "relying on evidence gathered under Section 1782 to support its arguments or from submitting evidence . . . at future hearings or trials", see Vanovac Decl. [D.E. 13-4 ¶¶ 10–12, 17], confirms that Petitioner "has the practical ability to inject the requested information into [the] foreign proceeding[s]." In re Bernal, 2018 WL 6620085, at *4 (quotation omitted).

Thus, the undersigned concludes that the third Section 1782 statutory factor is also satisfied.

**B. Consideration of the Intel discretionary factors does not support granting the Motion to Vacate.**

The Starwood Entities further contend that all of the Intel discretionary factors weigh against having granted Petitioner's request for Section 1782 discovery. See Motion [D.E. 6 at 12–21]. The undersigned addresses each Intel factor below and finds no merit in the Starwood Entities' arguments.

*1. Whether the Starwood Entities are participants in the Austrian proceedings.*

As to the first Intel factor, "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for [Section 1782] aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264. "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's

8

jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [Section 1782] aid." Id. Here, it is undisputed that the Starwood Entities are nonparticipants in the Austrian proceedings. See Motion [D.E. 6 at 13]; Response [D.E. 13 at 11].

Nevertheless, the Starwood Entities contend that "[d]iscovery regarding the votes at issue is available in the Austrian [p]roceedings" and that it would be a "poor exercise of discretion" to grant Petitioner's Section 1782 Application when the "relevant discovery from the parties is available in the Austrian [p]roceedings." See Motion [D.E. 6 at 13] (quotation marks and citations omitted). However, courts in this circuit have made clear that "even if the discovery is available [in the foreign forum], this does not mean that [the applicant] is not entitled to seek discovery using the procedures set forth in Section 1782." Gyptec, S.A. v. Hakim-Daccach, No. 16-20810-CIV, 2017 WL 6557425, at *7 (S.D. Fla. Sept. 27, 2017). To find otherwise "would result in including an exhaustion requirement in [S]ection 1782 that is not present." Id. (citing In re Application of North Am. Potash, Inc., No. 12-20637-CIV, 2012 WL 12877816, at *6 (S.D. Fla. Nov. 19, 2012)). Thus, even assuming *arguendo* that the Starwood Entities' contention regarding the availability of the requested evidence in Austria is correct, Petitioner is still entitled to seek discovery from the Starwood Entities in this district pursuant to Section 1782. Id.[3]

Thus, the first Intel factor does not weigh against having granted Petitioner's Section 1782 Application.

   2. *Whether the Vienna Commercial Court is receptive to this Court's judicial assistance.*

The Starwood Entities also argue that the second Intel factor militates against granting

---

[3] The Starwood Entities improperly cite In re Microsoft Corp., 428 F. Supp. 2d 188 (S.D.N.Y. 2006) in support of their arguments, see Motion [D.E. 6 at 13–14], given its abrogation by In re del Valle Ruiz, 939 F.3d 520 (2d Cir. 2019). In that more recent opinion, the Second Circuit "join[ed] the Eleventh Circuit in holding that a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad." In re del Valle Ruiz, 939 F.3d at 533.

Petitioner's Section 1782 Application because the nature of the tribunal and the character of the proceedings do not support allowing the discovery and Petitioner has failed to establish that the Vienna Commercial Court would be receptive to the assistance. See Motion [D.E. 6 at 13–16]. Specifically, the Starwood Entities argue that "the Austrian judges will decide whether votes on certain resolutions were technically, procedurally, or legally improper", which are "legal, not factual determinations", and which do not necessitate the discovery proposed by Petitioner. Id. at 13–14. Additionally, the Starwood Entities contend that Petitioner has failed to adduce affirmative evidence that the Vienna Commercial Court welcomes the aid; and that Petitioner neglected to advise the Austrian judges "that it was going to seek the discovery requested in the Application." Id. at 14–16.

Initially, the undersigned notes that in Dep't of Caldas v. Diageo PLC, 925 F.3d 1218 (11th Cir. 2019), the Eleventh Circuit adopted the "First Circuit's middle-of-the-road approach with respect to receptivity" and held "that district courts need not apply a rigid burden-shifting framework to properly weigh the discretionary factor of receptivity in a § 1782 case." Id. at 1223. Moreover, as noted by Petitioner, under the receptivity factor, courts look for "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." In re Bernal, 2018 WL 6620085, at *6 (emphasis in original) (internal quotation marks omitted) (citing Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995)). Here, there is no such proof establishing that the Austrian tribunal would not be receptive to the evidence sought by Petitioner. Furthermore, and contrary to the Starwood Entities' position, this Intel factor does not require Petitioner to either advise the Austrian tribunal of its Section 1782 Application or establish that the discovery will be admissible in the Austrian proceedings. Id. at *7 (citing In re Sampedro, No. 3:18mc47, 2018 WL 5630586, at *4 (D. Conn. Oct. 30, 2018)).

Thus, the second Intel factor also does not weigh against having granted Petitioner's Section 1782 Application.

3. *Whether Petitioner is attempting to circumvent Austrian proof-gathering restrictions.*

As to the third Intel factor, the Starwood Entities argue that the Section 1782 Application is an attempt to "side-step" the Vienna Commercial Court's discovery process because Petitioner has "made no attempt to obtain the discovery sought here in the Austrian [p]roceedings." See Motion [D.E. 6 at 16–17]. However, as noted above, Section 1782 does not impose a requirement that the applicant first pursue discovery in the foreign forum. See In re Bernal, 2018 WL 6620085, at *7. Although an "applicant's conduct in the foreign forum is not irrelevant", id. (internal quotation marks and citation omitted), "the question presented is not whether the [Austrian] Court would order the requested discovery if it had jurisdiction over the [Starwood Entities] but whether there are [Austrian] proof-gathering restrictions that are akin to privileges that would prohibit the acquisition or use of the items sought." Id. at *8. Although the Starwood Entities' expert, Mr. Diregger, opines that "[t]he rules of proceeding applicable to the Vienna Commercial Court allow [Petitioner] . . . to make [discovery] requests at this stage of the proceeding", see Diregger Decl. [D.E. 6-3 ¶¶ 20, 29, 36], he does not identify any Austrian proscription on Petitioner's pursuit of Section 1782 discovery in this district. By contrast, Petitioner's expert, Ms. Vanovac, confirms that there is "no Austrian law or court order that prohibits [Petitioner] from relying on evidence gathered under Section 1782". See Vanovac Decl. [D.E. 13-4 ¶ 17].

Moreover, the Starwood Entities' reliance on In re Rendon, No. 20-mc-21152, 2020 WL 8771274 (S.D. Fla. Nov. 5, 2020) in support of their contention that Petitioner is "jump[ing] the gun", see Reply [D.E. 16 at 8–9], is misplaced. In that case, the applicants "intend[ed] to use [the requested] information in a pending ICC arbitration, as well as three other proceedings which [had]

11

yet to be filed." In re Rendon, 2020 WL 8771274, at *3. In evaluating the third Intel factor, the Court was "hesitant to grant discovery under § 1782 before the nature of the suit [was] more specifically articulated" because "[p]arties should not be permitted to use § 1782 to "'jump the gun' on discovery in the underlying foreign suit." Id. at *15 (citation omitted). By contrast, the Austrian proceedings are already filed and have been pending since 2021 and 2022. See Section 1782 Application [D.E. 1 at 9–10]. Additionally, the applicants in In re Rendon were unable to prove "why the [foreign tribunals] would not be able to order discovery of [the] documents", see 2020 WL 8771274, at *15, whereas here, Petitioner affirmatively states that "the evidence sought [in its Section 1782 Application] is outside the territorial jurisdiction of the Austrian court." See Response [D.E. 13 at 13]; see also Vanovac Decl. [D.E. 13-4 ¶ 19]. Thus, Petitioner is not "jumping the gun" by seeking discovery for use in the ongoing Austrian proceedings from the Starwood Entities, who are located outside the territorial jurisdiction of the Vienna Commercial Court. Cf. In re Jagodzinski, No. 18-20606-MC, 2019 WL 1112389, at *7 (S.D. Fla. Jan. 15, 2019) (finding that third Intel factor weighed against the applicant because (1) the respondent entities had been sued, appeared, and defended prior actions filed by the applicant in French court, thereby undermining the applicant's argument that the respondents would not be subject to French jurisdiction, and (2) the suit underlying the Section 1782 application had yet to be filed).

Thus, the third Intel fa ctor also does not weigh against having granted Petitioner's Section 1782 Application.

  *4. Whether the Corporate Representative Subpoenas are unduly intrusive or burdensome.*

Finally, the Starwood Entities argue that the Corporate Representative Subpoenas are unduly burdensome because they are not narrowly tailored. See Motion [D.E. 6 at 17–21]. They further argue that all but one of the Corporate Representative Subpoenas' requests seek "'[a]ll'

documents or communications [which] in itself renders [them] overbroad and unduly burdensome" and "necessarily encompass[es]" documents that are privileged, protected, or "subject to confidentiality orders or agreements and/or highly confidential business secrets." Id. at 17–18. They further argue that Petitioner "seeks production of documents and communications exchanged between countless—mostly unidentified—individuals, at times with no regard to their subject matter"; and that Petitioner fails to explain how the information sought is relevant or proportional to the issues before the Austrian judges. Id. at 18–19.

In In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A., No. 20-25212-MC, 2021 WL 2323226 (S.D. Fla. June 1, 2021) (hereafter, "Valores Decevale"), the subpoenaed parties similarly argued that "the subpoenas [were] overbroad because they ask[ed] for 'any and all documents' with little or no scope" and were duplicative because the applicant had already received the information through an audit. Id. at *9. The Court acknowledged that, in connection with this factor, it "may consider whether an application contains unduly intrusive or burdensome requests, . . . is made in bad faith, for the purpose of harassment, . . . or is part of a fishing expedition". Id. (quotation marks and citations omitted). However, the Court ultimately rejected these "boilerplate arguments", id., which are similar to those made by the Starwood Entities here. In its ruling, the Valores Decevale court referenced Application of Consorcio Ecuatoriano de Telecomunicaciones, where the Eleventh Circuit rejected a similar argument because the respondent had

> failed to identify which particular discovery requests in [the] application [were] unduly burdensome or to provide any specific evidence to support its blanket claim that [it] should be exempted from having to comply with any and all discovery obligations due to overarching concerns about confidentiality that [were] stated only at the highest order of abstraction.

See 747 F.3d at 1273. Here, the Starwood Entities' arguments are equally devoid of the specificity

required to tip this factor in their favor.

Thus, the fourth Intel factor also does not weigh against having granted Petitioner's Section 1782 Application.

## MOTION TO QUASH

As discussed above, the parties' Joint Stipulation [D.E. 22] moots the Starwood Entities' arguments with respect to the Corporate Representative Subpoenas' technical compliance with the Court's Order on *Ex Parte* Application [D.E. 3]. The Starwood Entities also argue that the Corporate Representative Subpoenas are "unduly burdensome and seek documents and testimony that are beyond the scope of permissible discovery under the Federal Rules of Civil Procedure", thereby requiring, in the alternative, that the Corporate Representative Subpoenas be quashed. See Motion [D.E. 6 at 21–22]. They further contend that the Corporate Representative Subpoenas "require the Starwood Entities to comply beyond the geographical limits specified in [Federal Rule of Civil Procedure] 45(c)" (hereafter, "Rule 45(c)"). Id. at 25.

As noted above, the Starwood Entities do not articulate a particularized basis for finding that the Corporate Representative Subpoenas are burdensome. Moreover, the undersigned finds that the discovery sought by means of the Corporate Representative Subpoenas is proportional to the needs of the Austrian proceedings, based on Petitioner's representation that it "believes that the illegal actions alleged [in the Austrian proceedings] were taken at the behest of the ultimate owner of SOF-11, Starwood Capital[,] and other Starwood entities believed to be in the chain of ownership of SOF-11 as well as their officers, directors, employees, agents, or affiliates located [in this district]." See Section 1782 Application [D.E. 1 at 10]. The Corporate Representative Subpoenas seek deposition testimony and records from the seven (7) Starwood Entities in connection with their corporate operations and interaction with CA Immobilien. Thus, there is

14

"no question that the materials sought are relevant to" the special audit requests and related civil litigation pending before the Vienna Commercial Court. See In re Deposito Centralizado, 2021 WL 2323226, at *10 ("Because the [s]ubpoenaed [e]ntities only assert boilerplate unduly burdensome objections and the requested documents are relevant, Florida's laws regarding a right to privacy for financial information, assuming they apply instead of Federal law, do not protect the [s]ubpoenaed [e]ntities in this case.").

Finally, the Starwood Entities contend that the Corporate Representative Subpoenas should be quashed under Rule 45(c) because the Starwood Entities do not have any employees, let alone employees who can testify within the 100-mile radius imposed by Rule 45(c)(1)(A). See Motion [D.E. 6 at 25]. They further argue that "[t]o the extent, like here, a subpoena seeks documents outside this 100-mile radius, it should be quashed." Id. (citing Fed. R. Civ. P. 45(c)(2)(A)). However, Petitioner has established that all of the Starwood Entities are located in Miami Beach, Florida. See Section 1782 Application [D.E. 1 at 14–15] ("[A]ll of the Starwood [Entities] maintain their principal place of business in Miami Beach, Florida according to the Florida Department of State, Division of Corporations."). Given that the location of compliance with the Corporate Representative Subpoenas is 1 SE 3rd Avenue, Suite 2250, Miami, Florida 33131, see Modified Corporate Representative Subpoenas [D.E. 22-1], which is within 100 miles of where the Starwood Entities are located in Miami Beach, Florida, each of the Starwood Entities is in the position to designate a corporate representative for deposition and produce documents that are in their possession, custody, and control in accordance with the Federal Rules of Civil Procedure. Therefore, the undersigned finds no basis to quash the Corporate Representative Subpoenas.

## **RECOMMENDATION**

In accordance with the foregoing considerations, the undersigned RESPECTFULLY

RECOMMENDS that Respondents' Motion [D.E. 6] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers in Miami, Florida, on this 9th day of March, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Beth Bloom
      Counsel of Record