```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                       CASE NO. 22-CV-22437-BB
 3
      IN RE APPLICATION OF
 4    PETRUS ADVISERS INVESTMENTS FUND, L.P.,
      by its General Partner PETRUS
 5    ADVISERS INVESTMENTS
      GENERAL PARTNER, INC.,
 6                                        Miami, Florida
                      Plaintiff(s),
 7                                        June 27, 2024

 8                                        Pages 1 - 55

 9    ----------------------------------------------------------

10                        DISCOVERY HEARING
                 TRANSCRIBED FROM DIGITAL AUDIO RECORDING
11                BEFORE THE HONORABLE EDWIN G. TORRES
                  UNITED STATES CHIEF MAGISTRATE JUDGE
12
      APPEARANCES:
13
      FOR THE PETITIONER(S):  JOSHUA D. POYER, ESQ.
14                            HENDRIK G. MILNE, ESQ.
                              ABALLI MILNE KALIL, P.A.
15                            One Southeast Third Avenue
                              Miami, FL 33131
16                            305-373-6600
                              jpoyer@aballi.com
17                            hmilne@aballi.com

18

19    FOR THE RESPONDENT(S):  ANGELA D. DAKER, ESQ.
                              WHITE & CASE, LLP
20                            200 South Biscayne Boulevard
                              Miami, FL 33131
21                            305-995-5297
                              adaker@whitecase.com
22

23    TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
24                            jemancari@gmail.com

25
```

1    Thereupon,

2    the following proceedings were held:

3            THE DEPUTY CLERK:  Calling case Petrus Advisers

4    Investments Fund, case No. 22-22437, civil, Judge Bloom.

5            Counsel, your appearances for the record.

6            MR. POYER:  Good afternoon, your Honor.  Joshua Poyer

7    and Hendrik Milne, of Aballi Milne Kalil, on behalf of

8    petitioner Petrus.

9            MR. MILNE:  Good afternoon, Judge.

10           THE COURT:  Good afternoon.

11           MS. DAKER:  Good afternoon, your Honor.  Angela Daker

12   on behalf of the Starwood entities.

13           THE COURT:  Good afternoon to you.

14           Are we waiting on anybody else or this is it?

15           MS. DAKER:  No.  We are all set.

16           THE COURT:  OK.  Let me pull up your -- I think you

17   all filed a status report a couple of days ago.

18           MS. DAKER:  We did, your Honor.

19           THE COURT:  Let me pull that up.

20           OK.  Good.  So there's been some progress since our

21   last hearing.  So let me turn to counsel for the plaintiff and

22   tell me what else I need to do.

23           MR. POYER:  Good afternoon, your Honor.

24           THE COURT:  Move that mic a bit.

25           Is he coming through now?  No.

1          MR. POYER:  I don't need to stand at the podium, your

2     Honor.

3          THE COURT:  Is it not working right now?  Somebody

4     broke our lectern.  This was all working.  We will have to call

5     Christian.  So stay at the table.

6          MR. POYER:  Sure.

7          THE COURT:  Go ahead.

8          MR. POYER:  Thank you, Judge.

9          So I think it might be helpful for today's hearing to

10    kind of separate the issues and take them one at a time, which

11    is, one, we have one bucket which I think, respectfully, is

12    contempt of court on behalf of the respondent, which deals with

13    relevance objections, and we have another bucket which deals

14    with a limited amount of objections and privilege issues which

15    your Honor told them that they could make.  Those deal with

16    kind of burden and privilege and confidentiality issues, things

17    like that, things that the court didn't necessarily rule on

18    before.

19         So I'm going to start with the kind of big picture

20    relevance time frame objections that I think are, frankly,

21    outrageous here.

22         So at the April 3, 2024 hearing in this case your

23    Honor stated, and I hate to read out these quotes like this but

24    I don't know any other way to do it to make the point, so thank

25    you for your indulgence, Judge.  Your Honor stated at the end

1    of the hearing on April 3rd:  "Shouldn't I at least move the

2    ball forward?  In other words, basically now, at this point,

3    compel you to produce the responsive documents that are

4    contemplated by her order" -- that being the previous

5    magistrate judge and Judge Bloom -- "absent a specific argument

6    that the request as written goes beyond the scope of what the

7    1782 order has done, right, because she's made relevance

8    findings.  It is in her R&R.  You may disagree with it, but

9    she's ruled on that."

10           "To some extent it has to go to something more than

11   simply irrelevant; it has to go to the burden is so excessive

12   and the amount of time that it would take to do this would be

13   so gargantuan that the limited relevance it has is simply not

14   worth it, right.  That would be on a particular request."

15           That's at page 84.

16           Ms. Daker responds:  "I understand."

17           Your Honor continued a little later on:  "So I leave

18   open the possibility of some of these requests, some of them

19   may be so unreasonable, but that assumes that for many of them

20   you've made your objections, you've lost, so just produce what

21   you have, and so that way you can see there are no more

22   responsive documents to the request as worded."

23           So now, once again, we're back here and they are

24   saying, and it's in the status report, and I can go through

25   each of them, although we did previously consent to just kind

of dealing with them as a batch because the objections are all the same.  They're saying now, once again, they're not going to produce documents, quote, dated before September 27, 2018 or after May 5, 2022 because they are, quote, irrelevant to the underlying Austrian proceedings.

Now, there is no statement, sworn or otherwise, as the court had ordered or as the court had stated, that "the burden is so excessive and the amount of time to do this would be so gargantuan that the limited relevance is simply not worth it."

Again, Judge, it's a plain relevance objection that the R&R overruled, that Judge Bloom affirmed, and that this court stated, again, on April 3rd, had been overruled.  Once again we're in a position where opposing counsel says that she understands and then goes back to her office and what we get is something different.

So, Judge, what I think is happening here is I think that, respectfully, opposing counsel and their client, they tried these tactics on for size because the risk thus far to them has been low risk and high reward, meaning that they think that the worst the court can say is it's overruled and you just have to produce the documents.

The problem with that, Judge, is that every minute or every 6 minutes or every hour that I spend arguing with Ms. Daker about objections that have been overruled and overruled and overruled again and have to come back to court

1    and prepare for court and file status reports and argue this

2    stuff costs our client money.

3         I know our previous motion for sanctions is still

4    outstanding, but what I would propose, Judge, and I can put

5    this in a formal written motion if necessary, which I think it

6    would be necessary, is that what I would like is, I would like

7    to hear from Mr. Barry Sternlicht, the chairman and CEO of

8    Starwood Group.  I would like him to come into court and tell

9    the court why, after your Honor has issued black-and-white

10   order after black-and-white order saying relevance objections

11   overruled, give them the documents, I think that the only way

12   to resolve this, maybe, is to have him come in here and tell

13   the court why he thinks that that doesn't apply to his company

14   and him.

15        THE COURT:  Well, what did you get, though?  In other

16   words, what production have you received?

17        MR. POYER:  So what we received, Judge -- our

18   subpoena, the initial subpoena asked for, the time frame was

19   January 1, 2018 to the date that the order was entered or the

20   date that the subpoena was approved by the court, which is, I

21   think, August 3, 2022.  We got documents.  We did get

22   documents.

23        What Starwood is saying is, they're saying that for

24   certain requests, which we've noted, that they are not going to

25   give documents dated before September 27, 2018, which leaves

1    all those months in 2018 not produced, and they're not going to

2    give anything after May 5, 2022.

3            Again, Judge, there is no statement that --

4            THE COURT:  Was that included, though, in an order

5    that Judge Otazo-Reyes entered?  Was the temporal scope

6    litigated by her?

7            MR. POYER:  Yes.  I believe it was, your Honor.

8            THE COURT:  In one of her orders -- I think you

9    mentioned the April 3rd order -- did that include a statement

10   of the time period that she found to be relevant?

11           MR. POYER:  The April 3rd order, Judge, was your

12   order, just confirming the other order, saying go back.  I do

13   believe that there is, and I noted it in the Joint Status

14   Report.

15           THE COURT:  OK.

16           MR. POYER:  If your Honor would give me a second to

17   find that.

18           THE COURT:  Sure.

19           (Pause)

20           MR. POYER:  So, your Honor, at ECF No. 20 -- I

21   apologize, Judge.  At ECF No. 34, on page 10, Judge Bloom

22   addresses this, and she specifically says:  "Petrus's requests

23   for communications are limited in terms of subject matter and

24   time period, and the subject matter appears relevant to Petrus'

25   claims in the Austrian case."

1          Later on, Judge, she says, in the same paragraph of

2 that order, or the same paragraph in that order she says:  "The

3 requests, as a whole, appear crafted to discover information

4 relevant to those issues."

5          THE COURT:  Remind me, what is the date of that order?

6          MR. POYER:  The order is ECF No. 34, Judge, and --

7 give me one second -- I can find the date of the order.

8          THE COURT:  The May 26th order.

9          MR. POYER:  May 26, 2022, Judge?

10          THE COURT:  You said 34.  May 26, '23 is 34.

11          MR. POYER:  You're right, your Honor.  This is 2024

12 now.  I apologize.

13          THE COURT:  OK.

14          MR. POYER:  Yes.  Correct, Judge.

15          THE COURT:  OK.

16          MR. POYER:  The other thing, Judge, is that not only

17 has this kind of, in our view, Judge Bloom and the R&R has

18 dealt with this, but, frankly, I think this is the first time

19 that we've ever seen this very specific time frame argument.

20          Your Honor, I want to make clear, if you look at the

21 amended response, there are a lot of objections that we're not

22 challenging, objections that I think go to the spirit of what

23 your Honor had ordered.  In those objections they say, hey,

24 your definitions are so broad and so all-encompassing that

25 these requests are going to encompass tens of thousands or

1   whatever many amount of pages that just aren't going to be

2   really what you want, and they're going to be completely and

3   utterly irrelevant just because your definitions are so broad.

4   We said, OK, we're not going to challenge those, those are

5   fine, and I think that is what your Honor was intending.

6        We have these kind of objections where what they are

7   saying, in our opinion, is these are not relevant to the

8   underlying proceedings.  Again, I think that has been dealt

9   with.  It's been dealt with time and again.  At this point

10  we're here the third time in front of you, Judge, in front of

11  your Honor, arguing about this same point.

12       Again, it is not that they're saying there are so many

13  documents.  My understanding is they have the documents,

14  they're ready to be produced, they just don't want to produce

15  them because they don't think they're relevant.  They think it

16  is outside the time frame our client should be able to see.

17  Our position on that is, that is over, that's done, that's been

18  ordered again and again, yet here we are again, Judge.

19       So the other issues that we're dealing with here, we

20  are dealing with some privilege log issues.  The parties are

21  still working those issues out.  I think they gave us a

22  privilege log of 1,133 items.

23       The problem again, Judge, with this privilege log is

24  that it doesn't address privileges, it doesn't address

25  supposedly privileged documents which were created before their

1    arbitrary cutoff date or after their other arbitrary cutoff

2    date.  That means that, as I believe counsel told me on the

3    phone and in email, that if your Honor says, hey, produce these

4    other documents, which I think has already happened, that then

5    they will add them to the privilege log.

6         That is obviously a problem because, number one, we

7    think they should have been produced; we think that they're in

8    violation of the court's order; we think they're in contempt of

9    court, and we would argue that for those privileges, at least,

10   that they're waived.

11        We're also working through some other issues with the

12   privilege log, such as, like I said, right now there is a

13   thousand for the documents that are sufficiently logged, and we

14   don't have a problem with the log in its form.  There are about

15   300 or so.

16        So let me be clear, Judge.  So for the privilege log

17   for the stuff that's there, if an entry says that it's

18   discussing ongoing litigation, even if there is not a lawyer

19   involved, we're not challenging that designation.  If a

20   particular privilege log entry is from a lawyer, in-house

21   counsel or outside counsel, or to a lawyer, or even if a lawyer

22   is cc'd on it, we are not challenging that.  We are recognizing

23   the privilege and we are not challenging that.

24        There are 300 or so other documents that are on there

25   that we are currently working through.  I suppose it might be a

1  little premature to talk about that now, unless your Honor

2  would like me to, but we are working through those issues.  I'm

3  hopeful that we will get through it.  I'm not entirely

4  confident given the course of how this is going, but I think

5  that is where we are there.

6        THE COURT:  And what was your argument to Judge

7  Otazo-Reyes as to why all of 2018 and through the date of --

8  what was it -- May of '22, why all that time period was

9  relevant?

10       MR. POYER:  So, Judge, what we have here in Austria is

11 we have, and I think it was their initial -- so what the

12 company at issue does, the Austrian at issue does, CA Immo, C-A

13 I-M-M-O, they purchase and they develop and they sell, I think

14 they sell real estate.  They sell high-quality apartment

15 buildings, things like that.

16       Starwood is Starwood and all their associated

17 entities.  They are a private equity firm or private investment

18 firm, and they do a very similar thing.  So, like I said,

19 Mr. Sternlicht is the CEO and chairman of the Starwood

20 companies.

21       Now, what Starwood started doing in 2018 was they

22 purchased, and I can't say if they purchased -- they own

23 SOF-11, right, an Austrian company named SOF-11.  So Starwood

24 owns SOF-11.

25       SOF-11, in 2018, started to purchase shares in CA

1   Immo.  I think by 2018 they had something like 26 percent of

2   the shares.

3          Our contention in the Austrian courts is that Starwood

4   via SOF-11 is, via various illegal tactics and illegal

5   maneuvers, is trying to obtain a 75 percent threshold of stock

6   ownership in CA Immo which will allow them to then delist the

7   company -- so it won't be publicly listed anymore -- and that

8   will allow them to squeeze out minority shareholders such as

9   our client, Petrus General Partner.

10          So they begin acquiring these shares in 2018, right.

11   So I think that Ms. Daker's cutoff date of --

12          THE COURT:  I think she said September 2018.

13          MR. POYER:  -- September 2018, she says that it is

14   because that is the first date at which they actually obtained,

15   that SOF-11 actually obtained any of the voting shares in CA

16   Immo.

17          Our contention is that since we think that Starwood is

18   doing various illegal things, including placing representatives

19   on the advisory board of CA Immo and there's other conflicts of

20   interest between Starwood and some of the executive members,

21   like the CEO, the CIO, the CFO of CA Immo, is that just because

22   you started to obtain these shares in September 2018, there's

23   no reason to believe that -- what we want to know is we want to

24   know what they discussed beforehand, what was the plan

25   beforehand, because to us, Judge, it does not add up to

1    reality, that a billionaire owner of a Florida private equity

2    firm is going to attempt to obtain a controlling interest in a

3    billion dollar company halfway around the world on a whim and

4    without a plan.

5         THE COURT:  And the claims that are pending or were

6    pending at the time of the subpoena in Austria are what?

7         MR. POYER:  They're still pending, Judge.

8         THE COURT:  Right.

9         MR. POYER:  So the claims that are pending in the

10   Austrian court, there's three of them.  One of them involves

11   unjustified compensation to some of the CA Immo board members

12   and two of them involve CA Immo or SOF-11 illegally or

13   improperly shooting down Petrus's request for things called

14   special audits.

15        The reason that we say that they were illegally voted

16   on was because if you have an interest -- if you are accused by

17   a minority shareholder or shareholder of doing something

18   improper, then under Austrian law you are conflicted from

19   voting in the request for the special audit, and they voted in

20   them anyways.

21        Some other things that were happening was in order to

22   obtain the majority shares -- because, like I said before, at

23   the time in 2018 they had 26 percent.  I think now they're up

24   to 50 some percent.  So they have a majority shareholding in CA

25   Immo.

1          One of the ways that we contend in Austria that they

2     obtained this was by doing various illegal things, such as

3     stock price manipulation, which includes devaluing or publicly

4     stating that the value of certain of their property holdings

5     was lower than it was in order to lower stock prices, and then

6     they would buy them at depressed shares and then they would

7     magically announce property uplift, valuation uplifts for

8     previous quarters that may or may not have existed, thus

9     enriching themselves.

10          THE COURT:  OK.  And then the time period going

11     forward was what again in '22?

12          MR. POYER:  It was from May until, basically, August

13     3, 2022.  So we're dealing with several months in 2018 that we

14     don't have documents for and about three or four months in 2022

15     that the documents don't exist.

16          THE COURT:  And what is the respondents' theory as to

17     the May date as opposed to the date you picked?  You picked

18     what date in '22?

19          MR. POYER:  We picked the date that the court -- I

20     think the subpoena says -- I have it written down, or I have

21     the part of the subpoena that deals with it.  I believe the

22     subpoena says the date of the subpoena or the date that it

23     was --

24          THE COURT:  Through the present date or something like

25     that.

1          MR. POYER:  It says through the present date, exactly,

2    your Honor.

3          THE COURT:  OK.

4          MR. POYER:  The date on the top of it is August 3,

5    2022.  So that is the reason for that.

6          The reason the defendant says that we shouldn't get

7    anything beyond that is because that is the date of what we say

8    was the illegal vote, which was one of the illegal votes, which

9    was May 6, 2021, and they say that we shouldn't be entitled to

10   anything beyond that.  We say that that's an artificial,

11   arbitrary cutoff which -- obviously, if you're doing -- and

12   they haven't obtained their 75 percent threshold yet.  So if a

13   document was created afterwards, where they're talking about,

14   hey, this is what we did and this is what we plan to do,

15   whatever, we are saying that if it's responsive and it's

16   relevant that we should get it, and we think the court's

17   already ruled on that.

18         THE COURT:  OK.

19         MS. DAKER:  Your Honor, would you like me to address

20   what they've discussed up to now?

21         THE COURT:  Yes.  Let me just finish reading what you

22   wrote in the status report.

23         (Pause)

24         MR. POYER:  Judge, I just want to make one thing

25   clear.  This is the first time, this status report or the last

1    production, this is the first time that we've even heard about

2    these date cutoffs.  Up until this point we had no idea that

3    this was an issue.  I know that they had kind of generally

4    objected to time frame before, and, like I said, I think that

5    the magistrate judge and Judge Bloom in DE-34 dealt with that,

6    and I think your Honor dealt with it at the last hearing and

7    the April 3rd hearing as well.

8             THE COURT:  OK.

9             (Pause)

10            THE COURT:  OK.

11            MS. DAKER:  May I proceed, your Honor?

12            THE COURT:  Go ahead.

13            MS. DAKER:  Thank you, Judge.

14        So I guess I'm going to have to deal with accusations

15   of contempt and all of that in every hearing in this case.

16        Judge, two days ago we filed a Joint Status Report.  I

17   think your Honor is reading it now.  We drafted our part.

18   Petrus drafted their part.

19        Petrus's part says:  "Counsel for the parties have

20   greatly narrowed the remaining issues.  There are only two

21   outstanding issues remaining with the amended responses and

22   various issues relating to Starwood's privilege log, which the

23   parties are currently attempting to resolve without need to

24   resort to court intervention."  Then it goes on to talk about

25   the substantive issues.

1          So surprise is an understatement of what I am to hear

2     at the beginning of counsel's argument to the court because

3     there was never any mention in our meet-and-confer discussions

4     or in the Joint Status Report that they thought we had violated

5     your Honor's orders, like they argued the last time, etc.  So

6     surprised by that.  And it is not true.

7          Judge, I just quickly pulled up the transcripts from

8     the last couple of hearings.

9          At the last two hearings we were at your Honor said,

10    and I don't want to overstate or try to interpret what you

11    said, but you said that "The next" -- and I am at the May 22,

12    2024 hearing.  So the last hearing we were here on -- "The next

13    stage of the process would be to see what's missing, compel

14    what's missing, deal with any objections to specific things,

15    and then be done with that so that you can be at your

16    deposition at the end of June, beginning of July."  That is

17    page 39, starting at line 18.

18         At the prior hearing, which Mr. Poyer I think was

19    quoting from, your Honor again said to me, and I'm not going to

20    do a reading of the whole thing, but page 85, lines 8 through

21    9, you said:  "Unless you have a specific objection to this

22    category of documents."

23         So I think that your Honor left the door open -- that

24    is why we did amended responses and objections -- for us to do

25    specific surgical objections to certain categories of

1   documents.  So there's been no violation.

2          I'll talk about what has been done since the last

3   hearing we were in, Judge.

4          We produced almost 8,000 documents.  It's over 8,000

5   total now because, as you recall, we did a production back in

6   2023 based on Judge Otazo-Reyes' order.  We abandoned,

7   honestly, the bulk of our prior objections based on discussions

8   with the court, including part of what counsel was talking

9   about.

10          We surgically asserted very limited objections.  I

11   think the objections we have are time period, privilege, the

12   other substantive objection, that we all talked about in the

13   papers, which is whether or not they're entitled to

14   compensation information and the employment information from a

15   former Starwood employee and like a company of other ones that

16   they aren't challenging, right.  So overbroad definitions and

17   things like that.  We asserted narrow, surgical categories of

18   objections.

19          We produced a detailed, tailored privilege log on June

20   6.  They raised the issues with the log this week.  As counsel

21   said, and I don't know if we need to get into it now because we

22   may be able to resolve those issues, but they were raised this

23   week.

24          So I think that it is interesting because the

25   objections were too general, but now I'm specific and we're

1    getting criticized for that.

2         So, Judge, just to talk about what Judge Bloom did and

3    didn't rule on.  So in the order that you were talking with

4    counsel about, and this is docket entry 34, Judge Bloom did not

5    rule on any objection -- did not have in front of her any

6    objections to any specific requests.  What Judge Bloom ruled

7    on -- hence, the title of the order -- Order on Objections to

8    Magistrate Judge's Report and Recommendations.

9         The Report and Recommendation, again, was not on a set

10   of objections and responses to discovery requests, because

11   those were not in front of Judge Otazo-Reyes.  What was in

12   front of Judge Otazo-Reyes at that time when she prepared the

13   R&R -- they hadn't even been filed, our prior set of objections

14   and responses.  What was in front of her was a motion to

15   vacate, and that's what the R&R was on and that is what Judge

16   Bloom conducted a *de novo* review on.  So just to place that

17   order in the appropriate context, Judge.

18        Now, counsel was looking at page 10 of that order, and

19   they quoted that in the status report, although they dot, dot,

20   dotted over some important language, I think.  But, again, I'm

21   going to go to what Judge Bloom was ruling on, on page 10,

22   where they were quoting from.

23        Page 9, under 3:  The fourth Intel factor.  That's

24   what she was analyzing in looking at our objections or our

25   arguments on the fourth Intel factor, whether the requests were

1    unduly intrusive or burdensome.

2           If you go to the last paragraph on page 9, she says:

3    "Relatedly, the Starwood entities argue that many of the

4    requests are overbroad because they seek production of

5    documents and communications exchanged between countless --

6    mostly unidentified -- individuals, at times with no regard to

7    their subject matter."

8           So that is the objection Judge Bloom is ruling on in

9    the following paragraph, where she then says:  "Here, by

10   contrast, Petrus's request for communications are limited in

11   terms of subject matter."

12          So that was the objection, overarching objection,

13   frankly, to the bulk of them because that was the scope of that

14   argument under that Intel factor.

15          She says:  "And time period, and the subject matter

16   appears relevant to Petrus's claims in the Austrian case."

17          So that was about whether there were limitations on,

18   right, the requests, kind of as a whole, basically.  Because if

19   you look back, and I'm happy to do it but I don't think your

20   Honor needs to, they said they requested all documents.  Most

21   of their requests don't have a subject matter limitation, etc.

22   That was that type of argument.  Therefore, it's unduly

23   burdensome and intrusive under the fourth Intel factor.

24          She says there's a time period.  She doesn't say this

25   is the correct time period or I'm analyzing the time period.

```
 1    She's saying, counsel, no, on their face there is a time
 2    period.
 3            So that's that piece of it.  I'll talk about the
 4    substantive time period argument in a minute, but I just wanted
 5    to place her ruling in context.
 6            She also says, which I think is important to, I think,
 7    the first part of counsel's argument, and this is the part they
 8    dot, dot, dotted over before they jumped to the next paragraph.
 9    "To the extent that the Starwood entities object to the scope
10    of any particular request, it is incumbent upon the Starwood
11    entities to specify which request and explain why it imposes an
12    undue burden."
13            Again, this was because what she was ruling on was an
14    objection that the requests were unduly intrusive or burdensome
15    under the fourth Intel factor, right.  So she says, no, if you
16    have a specific objection, make it.  And there she's focused on
17    burden because that was what was being analyzed right there.
18    She certainly didn't foreclose other objections.
19            If you look at page 10 of her -- page 1 of her
20    order -- I'll get back to 10 in a second -- in the conclusion
21    she says:  "The court finds Magistrate Judge Otazo-Reyes' R&R
22    to be well-reasoned and correct.  Should additional discovery
23    issues arise, the court expects the parties to work together in
24    the spirit of cooperation, professionalism, and civility."
25            Then:  "To the extent they are unable to reach
```

1    agreement, they may bring specific points of contention to the

2    attention of Magistrate Judge Otazo-Reyes."

3         Next page:  "Pursuant to 18, U.S.C., Section 636 and

4    this District Magistrate Judge's rules, all further discovery

5    matters in this case are referred to Magistrate Judge

6    Otazo-Reyes."

7         Judge, the only reason I point to that is because the

8    notion that Judge Bloom intended for this order on an R&R, on a

9    motion to vacate, when our specific request-by request

10   objections and responses hadn't even been before her, that she

11   intended for this to dispose of them and foreclose us from

12   making any arguments about the scope of discovery, etc., that

13   is not consistent with this order and what it was doing, Judge.

14   That is why I mention that.  It certainly didn't violate this

15   order.

16        I think that on the relevance point --

17        THE COURT:  But aren't you ignoring the fact that when

18   you look at Judge Otazo-Reyes' R&R and then the order adopting

19   it, clearly she was dealing with the motion to vacate the

20   original grant of the petition and then she also adjudicated

21   the alternative motion to quash the subpoenas.

22        MS. DAKER:  Judge --

23        THE COURT:  If you look at your objection to her

24   order, to her R&R, you say specifically that she did not

25   properly weigh the arguments that you were raising as to how

1  unreasonable the requests were under the law, and specifically

2  you requested that she grant the motion to vacate in its

3  entirety or, alternatively, limit the discovery to specific

4  requests that are solely in relation to matters referred to,

5  i.e., the audit proceeding of May 2021 and the special

6  proceeding of May 2022.

7         So basically, you're asking Judge Bloom to limit the

8  subpoenas and you were asking Judge Otazo-Reyes to limit the

9  subpoenas.

10         MS. DAKER:  Yes.

11         THE COURT:  She didn't, and then neither did Judge

12  Bloom.

13         So at least with respect to a relevance on time

14  objection, aren't the movants correct?

15         MS. DAKER:  Judge, I don't --

16         THE COURT:  You're basically asking for a third bite

17  of the same apple.

18         MS. DAKER:  I don't think so, Judge, and here's why.

19  I'll explain why it's not the same objection, if that helps.

20         The objection there was high level -- you said this

21  case is about three votes, Petrus.  Petrus said this case is

22  about three votes.  Limit it to -- the argument was actually

23  more surgical than what we're talking about because it was

24  limit the discovery they're entitled to to like what happened

25  with those votes.  So those three votes that happened in '21

1    and '22, two in '21 and one in '22.  That was the argument,

2    kind of big picture, let's limit everything.

3          The argument we're making here isn't, actually -- and

4    they said no, right.  So the argument we're making here isn't

5    limited only to what did somebody vote on or communications

6    regarding, hey, how are we going to vote, should we vote this

7    way, vote that way, we voted this, kind of analyzing the vote.

8    That is what that argument was about.  Big picture.

9          These are specific request-by-request objections,

10   because we did make them in each request, to, OK, you get more

11   than -- they said you get more than just the voting kind of

12   records, the specifics about the procedural mechanics of

13   voting, things that mention voting, etc.  That's fine.  They've

14   gotten almost 8,000 documents.  So we certainly have produced

15   way beyond the scope of that based on those rulings.

16         Now these are kind of getting in the nitty gritty of

17   the specific, OK, so we have to do more than the vote.  Well,

18   how much more, and then what is the appropriate time period for

19   that.  Judge, I don't want to get too far afield from your

20   question, but the first vote, and I think we lay this out in

21   the papers, was May 6th of 2021.  Judge, the reason I say far

22   afield -- and I don't want them to get too far afield either

23   because counsel gave a description of the case and all of this

24   stuff that they said.  Judge, we don't have the complaint here.

25   Your Honor doesn't have it.  I don't know if they have it.

1    We've never gotten it.  I've asked for it a couple of times.

2    It's fine.

3         For purposes of analyzing this issue, because it is

4    not just relevance, it's overbreadth, right, proportionality,

5    all of that kind of stuff.  When you look at their *ex parte*

6    application, right -- so this has to be the equivalent of a

7    complaint, I guess, their description there of what this case

8    is about.

9         They talk about, page 1:  There are three related

10   foreign proceedings pending before the Austrian court. . . with

11   regard to alleged illegal actions taken by the majority

12   shareholder and its appointees and controlled persons.

13        They talk about, page 2:  Applicant claims in the

14   pending foreign lawsuits that the majority shareholder has

15   taken numerous illegal actions to prefer its owner's interests

16   at the expense of the company and its shareholders, right.

17        Then we move on to page 3, Judge, and it says:  There

18   were votes at three general meetings of the shareholders, two

19   in '2021 and one in 2022, which are material here, right.

20        Then they go on, on page 9, and this is where they

21   start talking what the cases are about.  They say Case 1, Case

22   2, and Case 3.  It makes clear in here that the cases, and I

23   think it's important, right, because when we're talking about

24   what they're entitled to for discovery, Judge, and they say

25   something about this, I think, in the status report, well,

1    Section 1782 doesn't limit discovery.  They're still limited by

2    Rule 26, right.  It's not a broader scope of discovery that

3    they get here than they would if the action was filed and

4    pending in front of your Honor.

5            This makes clear that these three cases are about

6    votes on resolutions regarding a host of different issues.  So

7    there is an argument, Judge, and we didn't even make it, that

8    the first vote would be a good cutting-off point.  We didn't

9    say that.

10           THE COURT:  You did make it.  You made it in your

11   arguments to Judge Otazo-Reyes and you made it in your

12   arguments to Judge Bloom.

13           MS. DAKER:  Judge, I'm saying here --

14           THE COURT:  So how many more times do you need to make

15   it?

16           MS. DAKER:  Judge, again, it's a different argument

17   because that was a broad scope, big picture kind of, hey, in

18   the motion vacate, just kind of overarching.  It didn't delve

19   into specific requests.  It wasn't a request-by-request

20   analysis.  Or objections.  Those were not in front of the

21   court.

22           Even Judge Bloom's order, if you look at it, and which

23   I know your Honor has and I know counsel has -- we certainly

24   looked at it a lot -- she says, and this is the last line of

25   what they quoted -- this is docket entry 34, page 10 -- "The

1    requests, as a whole, appear crafted to discover information

2    relevant to those issues," and those issues are the legality of

3    those three votes.  That's the prior sentence there.

4            So when she says "as a whole, appear crafted," Judge,

5    and then goes on to say, I'm going to refer further discovery

6    disputes to -- if she disposed of everything, what further

7    discovery disputes are we going to have?  If our responses and

8    objections were never -- we never met and conferred about them,

9    we never brought them to her attention because the motion to

10   vacate and quash was there.  They were served --

11           THE COURT:  But you were served with a subpoena --

12   this isn't a Rule 34 production request -- you were served with

13   a subpoena for categories of documents and then you chose to

14   move to quash them.

15           MS. DAKER:  Right.

16           THE COURT:  Which you have every right to do under

17   Rule 45, right.

18           MS. DAKER:  Yes.

19           THE COURT:  But she adjudicated that, didn't she?

20           MS. DAKER:  Judge, again, I think there's a difference

21   between the motion to vacate and quash -- get rid of the

22   subpoena altogether, right, or force them to rewrite their

23   requests -- verses, OK, we're not going to do that.  Let's look

24   at the request and see what the specific parameters should be

25   and what our specific objections are.

1        Judge, I understand what you are saying, but the

2   problem, I think, with the approach that they're proposing,

3   which is we've given 8,000 documents that covered September of

4   2018, when our client became or SOF-11, which is not one of the

5   subpoenaed entities here but a Starwood-related entity -- it is

6   a Luxembourg company -- acquired their shares and their ability

7   to put people on the board.  They didn't put people on the

8   board until the following day, which was September 28th.  They

9   didn't become majority shareholder until later than that, I

10  think in 2021.

11       That period of time is more than sufficient cushion,

12  Judge, for that first vote that they say in their *ex parte*

13  application, which is docket entry 1.  More than sufficient

14  cushion, Judge.

15       I think that if Judge Bloom -- and, again, I don't

16  like being in a position of interpreting, having to interpret

17  what judges are thinking, but if she disposed of every issue

18  and if Judge Otazo-Reyes, frankly, who we had a hearing with

19  the week after this order came out -- I think this order came

20  out on a Friday and the hearing was Monday, if I recall.  If

21  they both intended for the R&R and the adoption of the R&R to

22  be fully dispositive of every issue, including our objections

23  and responses to the requests on the corporate representative

24  topics, I think they would have said that and there would be

25  nothing left to do.

1          So when Judge Otazo-Reyes said in that order we talked

2     about at the last hearing, when she says, OK, and she said in

3     the transcript:  OK.  Well, go ahead and produce -- OK.  You

4     have some objections, counsel.

5          Yes.

6          You agree they're entitled to something --

7          Sure.

8          -- regarding one of the proceedings.  Go ahead and

9     produce that to them, produce the deponent, and then we'll see

10    if you all have any additional problems.

11         If she thought that her R&R and Judge Bloom's adoption

12    of it disposed of everything, and we have no right to any

13    objections or anything, then I think they would have said that,

14    Judge.  I think that they would have said that.

15         There is no analysis of the time period issue, the

16    specifics of it.  The objection wasn't really a specific

17    objection.  It is a request, actually.  It was an objection to

18    the application.

19         They haven't articulated a basis for picking -- you

20    know, they said something about we picked an arbitrary cutoff.

21    No, we didn't.  We picked a reasonable cutoff that gives them,

22    again, three something years of cushion before the first vote,

23    that the first case is supposedly about.  They picked an

24    arbitrary -- they picked two arbitrary dates, Judge.  January

25    1, 2018.  Nothing happened on December 31st.  Nothing happened

1   on January 1 that wasn't happening December 31st or whatever.

2   That's arbitrary.  Present.  That's arbitrary, assuming that

3   means the date they filed the *ex parte* application.  Those are

4   arbitrary dates.

5         We proposed a reasonable, recent date that is tethered

6   to the transactions and occurrences, the votes, that are at

7   issue in those underlying proceedings.

8         Judge, again, my client has produced substantive --

9   you're not hearing complaints about the production, right.

10  You're not hearing they just threw a bunch of receipts at us or

11  anything like that.  They're happy.  They don't want to say

12  that, but they're happy with the production, right.

13        So we produced substantive, meaty documents that I

14  think are within the scope, right, except for a couple of

15  little objections, one of which I think we are going to talk

16  about today or that they raised, and then this.  There should

17  be limits, Judge.  I mean, there really should be.

18        The time period -- and, again, September 2018 through

19  the date of the last vote, they haven't articulated any reason

20  why documents after the last vote -- it is a three-month

21  period, I think.

22        THE COURT:  When was the last vote?

23        MS. DAKER:  The last vote was May 5, 2022, and they

24  filed their *ex parte* application, I think, August 2nd or

25  something, 2022.

1          So, again, just to underscore the point of arbitrary,

2     that's arbitrary, to present.  That's not a real date.  January

3     1, 2018.  January 1, 2018.  At least if it is about -- and that

4     is why I read the part, and we can all read, but that is why I

5     read that first page of their application.

6          THE COURT:  Why is your proposed date less arbitrary?

7          MS. DAKER:  Because it's tethered to what they say the

8     case is about in their *ex parte* application.  Majority share

9     holder.  It says:  "With regard to alleged illegal actions

10    taken by the majority shareholder and its appointees and

11    controlled persons."

12         SOF-11, which is not any of the entities I'm seeing

13    here, but the Luxembourg entity didn't even become majority

14    shareholder until 2021, but they acquired their golden shares

15    which then allowed them to put people on the board, because the

16    things that they said, and counsel said it in, I think,

17    somewhere what he was talking about, but they definitely say it

18    in here, the things that SOF-11 supposedly influenced were

19    these three votes, which it dealt with a bunch of different

20    resolutions.

21         THE COURT:  And when were those shares acquired

22    initially?

23         MS. DAKER:  Those shares were acquired September 27th

24    of 2018.  They didn't even become a majority shareholder until

25    July of 2021.  So, Judge, we backed it out pretty far.

1          THE COURT:  But I guess the argument, though, is that
2     since they have allegations of essentially breach of fiduciary
3     duty, what in our law would be a breach of fiduciary duty or
4     corporate misgovernance or things of that nature that occurred,
5     that began occurring in September of 2018.  The argument is
6     that you're not going to -- the scope of production would not
7     be limited to the first act that would have been a predicate
8     act of the conspiracy, if you will.  You're going to have to go
9     back to an earlier date when the conspiracy actually began.

10         Now I don't know if there was a conspiracy, but just
11    taking it --

12         MS. DAKER:  Judge, I understand.

13         THE COURT:  -- at face value of the allegations in
14    Austria.

15         So then by that measure, why isn't your date more
16    arbitrary than their date?

17         MS. DAKER:  Because, Judge, if you look, they don't
18    say the first act -- the first act they talk about is that
19    first vote, right.  So the transaction or occurrence,
20    whatever -- I don't think there was a crime, but just for the
21    sake of ease or reference, without trying to understand
22    Austrian law, was the vote.  You illegally influenced this
23    vote.  That's their argument.  These three votes.

24         The first one was May 6, 2021.  Part of the argument
25    is they illegally influenced because they just had people on

1  the board able to vote, right, because they acquired these

2  shares on September 27th.  So that's already backed up.  So I

3  think the transaction or occurrence, right, if we're going to

4  go that route, the transaction or occurrences are the three

5  votes.  OK.

6        So the vote occurred on May 6, 2021.  You improperly

7  influenced it.  SOF-11 improperly influenced it.  OK.  Well,

8  let's back up to the time where they even had any ability to

9  influence anything on the vote when they had their board

10  members on that.  So again, Judge, it's already backed up from

11  then.

12        They're not saying we did anything wrong on -- like

13  the vote wasn't September 27th in 2018.  Judge, I just think --

14        THE COURT:  What was your proposed date on the back

15  side?

16        MS. DAKER:  The last vote, May 5, 2022.  That's just

17  the last vote.  That's what the proceeding was about.

18        THE COURT:  What was their date?

19        MS. DAKER:  Their date was to present.  Who knows what

20  that means, but I interpreted it to mean that they filed the

21  application, which was August 2nd of 2022.  I think it was

22  served or you could do service shortly thereafter.  I think it

23  was served August 12th, something like that.  It was fast.

24        THE COURT:  OK.  Do you want to have the last word on

25  that before we move on to the next thing?

1          MR. POYER:  Yes, your Honor.  Thank you.

2          So starting with what the previous magistrate judge

3     and Judge Bloom decided.

4          In DE-24, which is the R&R, as your Honor pointed out,

5     Judge Otazo-Reyes dealt with not just the motion to vacate

6     based on the Intel factors and the statutory factors, she dealt

7     with the motion to quash the subpoenas.

8          In there she states, on page 14:  "The Starwood

9     entities also argue that the corporate representative subpoenas

10    are 'unduly burdensome and seek documents and testimony that

11    are beyond the scope of permissible discovery under the Federal

12    Rules of Civil Procedure', thereby requiring, in the

13    alternative, that the corporate representative subpoenas be

14    quashed."

15         In DE-34, which is Judge Bloom's order affirming the

16    R&R, Judge Bloom also addresses the motion to quash, and she

17    says on page 12:  "They argue that the R&R erred in finding

18    Petrus's request relevant and proportional to the needs of this

19    case.  The magistrate judge rejected the Starwood entities'

20    relevance and proportionality arguments for essentially same

21    reasons she rejected the Starwood entities' arguments regarding

22    the fourth Intel factor."

23         Judge Bloom went on to say:  "The court agrees with

24    the magistrate judge that the Starwood entities' arguments are

25    essentially boilerplate objections that seek to prohibit all

1    discovery in this case."

2         So, your Honor, I think that it is very clear that the

3    previous magistrate judge and Judge Bloom dealt with the

4    relevance and the proportionality arguments and the argument

5    that the scope of discovery exceeded that which was permissible

6    under the Federal Rules of Civil Procedure.

7         Now I'm hearing opposing counsel say we didn't raise

8    this specific thing, we didn't raise that specific thing.

9    Well, that was their choice.  Their choice at the time, as

10   noted by both judges, was that they took a kind of boilerplate

11   all-or-nothing approach.  Had they wanted to make those

12   specific relevance objections and proportionality objections

13   specifically at that time, as the time frame, that was the time

14   to have done so, not now.  They didn't do that then.  That was

15   their choice.  I think that both judges and your Honor has

16   correctly, respectfully, decided that they have to live with

17   that choice.

18        Now when you want to get to the argument, if you

19   want -- I respectfully, your Honor, think that the arguments

20   end there, but I will address the relevance argument as well.

21        So they're saying that we shouldn't be permitted what

22   is normally outside the scope of the Rules of Civil Procedure,

23   and I don't disagree with that, but, as your Honor notes in

24   your discovery procedures order, which is DE-82, when a party

25   objects that an objection lacks relevance, they have to

1    particularly say why it lacks relevance and they also have to

2    say why the information sought will not reasonably lead to

3    admissible evidence.

4         "Parties are reminded that the Federal Rules allow for

5    broad discovery, which does not need to be admissible at

6    trial."

7         That is on page 2 of DE-82, which was entered when

8    your Honor came on board this case in January 2024.

9         So what we're hearing, then, is that it is not

10   relevant.  We haven't heard any arguments about why it is not

11   reasonably calculated to lead to admissible evidence.  We're

12   not hearing that they don't have documents that are responsive.

13   They're just saying we don't want to give the documents.  But

14   that is not how the rules work.  The rules work that if we make

15   a request, they're allowed to object to it.  They did.  They

16   lost.  Now we get the documents.

17        Opposing counsel is saying that we have, quote, more

18   than sufficient documents, but that's not for opposing counsel

19   to say.  Opposing counsel had their argument.  She had her say

20   or she had her argument and the judge ruled that it was not

21   well-taken.

22        So what we get, Judge, is we get the documents that --

23   I respectfully submit that we get the documents to which we're

24   entitled which are the ones that are set out in the time frame

25   that we put forth.

1          If you want to get into the particulars of the

2    Austrian proceedings, I don't think we really need to do that.

3    I don't understand entirely all of it, but what I will say is

4    that our client chose that year for the documents that they

5    wanted to see, and I think that it is a completely fair cutoff

6    because, like I said before, billionaires do not go into a

7    completely foreign market, halfway across the world, to obtain

8    a stake, a controlling stake in another multibillion dollar

9    company without a plan.  They do not willy-nilly go in and just

10   throw a couple million dollars here and a couple million

11   dollars there without a plan, billionaire or otherwise.

12         What we're entitled to see, and whether our client has

13   specifically said they want to see, what they want to see, are

14   there documents that talk about the plan, are there documents

15   that talk about any illegal or potentially illegal activities

16   or actions that might have taken place.

17         Again, the last thing I'll say on that, Judge, is they

18   aren't saying we don't have the documents.  They aren't saying

19   it is a burden to produce them.  They're just saying we don't

20   want you to see them.  They made that objection.  They lost on

21   that objection.

22         THE COURT:  OK.  I do think that this argument was

23   lost already at the initial stage of the case on the broader

24   picture of the breadth of the subpoena.  I think that

25   definitely was argued to Judge Otazo-Reyes.

1          In fairness to the respondent, reading through the

2     transcript of the June -- what date was this -- June 22nd

3     hearing, the discussion between the parties at that June 22nd

4     hearing does raise some ambiguity as to what Judge Otazo-Reyes

5     viewed her order as having done.

6          Be that as it may, with respect to the pending issue

7     now, the relevance objection that is being raised now, one, I

8     think it was disposed of based upon Judge Otazo-Reyes' order;

9     two, if you look at it one more time, the burden is on the

10    objecting party to sustain the relevance objection.  I've heard

11    you out and I don't find that your date is so much more

12    reasonable than the movant's date, and there is a logic to the

13    request going back to the time period it is going back to, at

14    least on the back end of things.

15         So to the extent you are trying to, we'll call it

16    renew a relevance objection to the January 2018 time frame on

17    the subpoena, that objection is overruled again.

18         With respect to the front side of the subpoena,

19    meaning the most recent date, the 2022 time period, can you

20    address that issue?  Because if the last vote occurred in 2021,

21    why wouldn't the end of '21 be the relevant time period as

22    opposed to August of '22?

23         MR. POYER:  So our position there, Judge, is just that

24    these are human beings that are taking actions.  They are

25    spending a lot of money that isn't theirs, and they have a

1    plan.

2              There is no reason to think, in my mind at least, that

3    an individual who is taking the time and the trouble to spend

4    hundreds of millions, if not billions of dollars to obtain a

5    majority stake isn't going to maybe discuss how the plan went,

6    what could have went better, what else they need to do

7    afterwards.  I don't know that to be the case.

8              THE COURT:  And when was the Austrian action filed?

9              MR. POYER:  That I can find out for you, Judge.

10             So there are three cases.  Case 1 was filed June 6,

11   2021.  The second case was filed December 30, 2021.  The third

12   case was filed 2022, June 7, 2022.

13             So I think it is reasonable to believe that they might

14   have been talking about all of this as of those dates.

15             Again, this is --

16             THE COURT:  But if I compel that time period post

17   December of '21, aren't I then creating even more privilege

18   arguments now because of the pendency of litigation in Austria?

19             MR. POYER:  Sure.  But we're not seeking those

20   documents, Judge.  Like I said before, when we look at their

21   privilege log and I see on there that, even if it is not a

22   discussion that includes lawyers, if I see a discussion between

23   someone at Starwood and someone at CA Immo that says we're

24   discussing potential or ongoing litigation, I said off the

25   table, I'm not even going to ask about that, I'm not even going

1    to ever ask about an *in camera* review about that.  I am going

2    to take counsel's representation as an officer of the court

3    that that is what these communications say, and our system

4    protects that, and I respect that.

5         So I'm not asking for any document that talks about

6    ongoing litigation as such, about how to defend the case or

7    claims or whatever.  I'm just asking for, in general, as a

8    business proposition, if they talked about this stuff, then

9    we're entitled to it, or if it is possibly subject to the crime

10   fraud exception, which I think that there are some instances on

11   the privilege log where that might lie.

12        Again, Judge, I will say that the date was in the

13   initial subpoenas and the court ordered the subpoenas approved

14   as of that date.  I don't want to repeat all the arguments I

15   made before regarding that, but it is safe to say that I

16   believe that they hold equally true here.

17        THE COURT:  And what was the date of the filing of the

18   third action again?  June '22?

19        MR. POYER:  It was June 7, 2022.

20        THE COURT:  OK.

21        MR. POYER:  And we filed our 1782 action --

22        THE COURT:  In August, I think.

23        MR. POYER:  -- August 3, 2022.

24        THE COURT:  Right.  OK.  All right.  So then what I'll

25   do is I will grant relief to the defendant only on the 2022

1   time period.

2          The respondent wants to produce documents only through

3   May 6th based upon the petitioner's theories and arguments that

4   they may be close to the relevant time period, but I will go

5   with what the petitioner at the very least is suggesting, that

6   I should go through June of 2022.

7          That will be the date on that end.  So you get a

8   couple of months' relief on the disputed issue.

9          As to the January 2018 versus September 2018 dispute,

10  I'm ruling in favor of the petitioner.  So January 2018 through

11  June 2022.

12         OK.  So that disposes of the time period problem.

13         The next issue.  I guess you had a privilege issue.

14  Did you want me to address that now?

15         MR. POYER:  Yes.  Well, Judge, the privilege issue

16  would be regarding the time frames on which documents were, in

17  our view, arbitrarily withheld.  We would argue that the

18  privilege as to those documents is waived because they should

19  have been produced.  They weren't produced, and the privilege

20  log, therefore, should have been produced within, I think it is

21  14 days of production.  So assuming production should have been

22  made -- it was not, and that was improper, and we think it's

23  been improper for some time now -- then we would argue that as

24  to those documents that that privilege is waived.

25         THE COURT:  It is too draconian a penalty for that,

1    number one.  Number two, as I said before, there is some

2    ambiguity in the record.  I generally agree with you, but there

3    is enough ambiguity in the record that it would be too

4    draconian and raise an unnecessary appellate issue.  They may

5    appeal, in which case you won't get anything.

6            MR. POYER:  Understood, your Honor.

7            THE COURT:  So I would rather not do that.

8            So I won't find that there is a waiver.  I will allow

9    a privilege log to be prepared for the additional time periods

10   that I'm compelling.  Now, I can expedite that process,

11   obviously, but I will give them the opportunity to do that.

12           Next issue I can tackle now?

13           MR. POYER:  Yes, Judge.  I believe that otherwise we

14   only have an actual fight about two -- I apologize -- about two

15   specific document requests.

16           THE COURT:  OK.

17           MR. POYER:  Those document requests -- at this time,

18   Judge.  It remains to be seen, obviously, what we get after

19   this.

20           One moment, Judge.  I'm looking through the status

21   report.  I apologize.

22            (Pause)

23           MR. POYER:  So I see here that Ms. Daker has talked

24   about Nos. 12, 21, 22, but we weren't arguing about those.  I

25   am taking opposing counsel's representation that any documents

1    that were produced or any documents that were talking about

2    different transactions were irrelevant.

3            Same with request 23, 24, 25.  If I didn't make that

4    clear to opposing counsel, I apologize, but we aren't arguing

5    about those either.  We aren't challenging those.

6            Judge, we are still working through the actual

7    privilege descriptions, which we haven't had a chance and I

8    don't think opposing counsel has had a chance to get all the

9    way through that, which we may be requesting *in camera* review

10   on some of them, like a sample size.

11           THE COURT:  OK.

12           MR. POYER:  But we are not there yet.  Hopefully we

13   can work that out.

14           THE COURT:  OK.

15           MR. POYER:  Our only other two disagreements are

16   request 169 and request 170.

17           Request 169 reads:  "All documents regarding the

18   employment of Mr. Viscius by the Starwood entities."

19           Now, this is regarding an employee of Starwood.  He

20   was a former middle management employee of Starwood.  His name

21   is Keegan Viscius.

22           Our argument, or the argument in the Austrian court,

23   is that he was appointed by Starwood as kind of a corporate

24   plant in order to take actions at the behest of Starwood via

25   SOF-11 and that they were contrary, that his actions were taken

1    contrary to Austrian law because they favored that shareholder

2    and because his representation on the supervisory board -- I'm

3    sorry.  His representation or his conflict of interest was not

4    disclosed as required by Austrian law.

5              THE COURT:  OK.  And he was planted where?  He was a

6    plant to where?

7              MR. POYER:  He was planted by the friendly supervisory

8    board of CA Immo as the CIO of CA Immo, the chief investment

9    officer.

10             THE COURT:  Investment officer.

11             MR. POYER:  I believe that's right.

12             THE COURT:  OK.  And he had been previously employed

13   as a Starwood employee.

14             MR. POYER:  Yes.  He had been previously employed as a

15   Starwood employee.

16             THE COURT:  OK.

17             MR. POYER:  The other one is 170, and 170 relates to,

18   or it reads -- I'm sorry -- All documents regarding the

19   compensation structure and payments to Mr. Viscius, and that's

20   from Starwood.

21             So our position there is that he was not only

22   receiving an unjustified salary based upon his experience, lack

23   of German in the Austrian company, but that he was being bribed

24   or paid by Starwood in order to take actions that benefited

25   Starwood in contravention to Austrian law which harmed our

1    client.

2         So, therefore, we want to see if during the relevant

3    time frame, which we've now discussed, that Mr. Viscius was, if

4    he was indeed employed by Starwood or if he was paid under the

5    table via some sweetheart deal in order to take actions that

6    benefited Starwood to the detriment of our client.

7         THE COURT:  And when did he become the chief

8    investment officer?

9         MR. POYER:  I'm just checking on that, Judge.

10        MS. DAKER:  Your Honor, it was November of 2018.

11        MR. POYER:  November of 2018.

12        THE COURT:  OK.

13        MR. POYER:  So therefore, our argument then is that

14   any responsive or relevant documents would fall within that

15   relevant time frame that we've already discussed.

16        THE COURT:  And how would all documents regarding his

17   employment --

18        MR. POYER:  I apologize, your Honor.  Could you repeat

19   the question?

20        THE COURT:  How would all documents regarding his

21   employment with Starwood have any weight on this?

22        In other words, if there is no dispute that he was a

23   Starwood employee and the dispute is that he was supposed to be

24   a former employee of Starwood and then he became a fiduciary of

25   the supervisory board, why do I need all documents for him that

1    go further than that?

2            MR. POYER:  Because I think, your Honor, our argument

3    is that he was an undisclosed representative of Starwood, and

4    if he was still employed by Starwood in 2018, 2019, 2020 or

5    2021, then we would be entitled to those documents.

6            THE COURT:  Did you ask for communications during the

7    time period, did you ask for communications between relevant

8    people at Starwood and him?

9            MR. POYER:  I believe we did, yes, Judge.

10           THE COURT:  And did you get documentation on that?

11           MR. POYER:  I couldn't say.  We did receive a large

12   number of documents that our client is still working through,

13   but I couldn't say that at this time.

14           THE COURT:  Wouldn't that be evidence, though, to

15   support your argument that he was basically wearing two hats at

16   the same time, in violation of Austrian law?  Those

17   communications would evidence it.

18           MR. POYER:  We don't know, Judge, because I think that

19   there are documents being withheld based on this objection

20   relevant to that.

21           In my discussions with opposing counsel I asked if

22   there is an objection made, does that mean that you're holding

23   documents back based on that objection, and she said yes,

24   that's what that means.  So therefore, there are documents that

25   might talk about this or I think there are documents that talk

1  about this, that might be relevant, and I don't necessarily

2  think that once this person was installed as an executive

3  member or an officer of the Austrian company, I don't think

4  that -- so he's going to have an email address, a CA Immo email

5  address, and I don't necessarily believe that those documents

6  would encompass all of it.  I don't know because I haven't seen

7  them, and that's what we're trying to find out.  If that

8  answers your Honor's question.

9          THE COURT:  OK.

10          MR. POYER:  I think that even more important than that

11  issue to us is the compensation issue.  I think that

12  definitely, at a minimum, if he was still receiving

13  compensation from Starwood or any of the Starwood entities

14  while he is an executive of CA Immo, which our understanding

15  would violate Austrian law and may have damaged our client, I

16  think that, at a minimum, we would be entitled to those

17  documents, Judge.

18          THE COURT:  OK.  Do you want to respond to that latter

19  point first?

20          MS. DAKER:  Sure.  So just in terms of your question

21  regarding what was produced.

22          THE COURT:  Yes.

23          MS. DAKER:  I guess they haven't reviewed everything,

24  which I understand it is a lot of pages, but there are tons of

25  communications between -- because, just to step back a second,

1    when Mr. Viscius became the CIO of CA Immo, there were three

2    people from Starwood on the supervisory board.  So one point of

3    clarification --

4              THE COURT:  Including him?

5              MS. DAKER:  No.  That's the point of clarification.

6    He was not and has never been on the supervisory board.  So he

7    did not vote at any of these three votes that are the subject

8    matter of the proceedings in Austria, right.  So they're like

9    we want to know.  It is kind of like hope.  We're hoping

10   there's something there.  We'd love to know.  There are a lot

11   of things we'd love to know, but discovery, and I know we all

12   understand the standard, but you analyze it with regard to the

13   claims and defenses.  So the claims as they say them are in

14   this *ex parte* application.  It is about three votes.

15   Mr. Viscius did not vote on those at all.  He wasn't on the

16   supervisory board ever.  So a point of clarification.

17             So there are, though, they requested -- again, there's

18   200 requests.  Any possible permutation of communications

19   between CA Immo and Starwood.  I think there is a request that

20   is just that, right, for the time period.  So those would fall

21   within, be responsive to communications with Mr. Viscius while

22   he was at CA Immo because, again, they are the majority

23   shareholder, they have these board members, there's stuff about

24   meetings and this and that.  So they did get a lot of that.

25             They also got -- and I just want to make clear what

1   the objection is.  It says it in the papers.  The objection is

2   about this man's compensation, employee information for the

3   time he was at Starwood.  He was at Starwood from 2011 to 2018.

4   Then he chose CA Immo in November of 2018.  The objection is

5   about his compensation for his work and time at Starwood and

6   his employment file and all that kind of stuff.

7          So what they did get, though, communications regarding

8   his performance and duties and his role at CA Immo, right, to

9   the extent that showed up in the emails, they got that.  His

10  contract renewal negotiations with CA Immo, to the extent

11  that -- because, again, we have board members who are Starwood

12  folks, right.  And we collected entire inboxes.  Just in terms

13  of the scope of what we did, we collected entire inboxes.  So

14  to the extent any of that stuff regarding him and his time

15  there came up, communications between him and supervisory board

16  members that were in the, happen to show up in the Starwood

17  servers, we produced those.  So they got a lot of this stuff

18  with communications with him.

19         I think your Honor is right that those communications,

20  to the extent what they're talking about, which, honestly,

21  isn't what they talked about in the *ex parte* application as to

22  him, that would, if there was anything there, that would be in

23  the emails.  But his work at Starwood, compensation for his

24  work at Starwood, payments, all that kind of stuff --

25         THE COURT:  Well, after he left Starwood and became

1  the CIO at the company, at the CA Immo company, should there
2  have been any further compensation between him and Starwood?
3          MS. DAKER:  Well, Judge, it depends on what the --
4  right.  I don't know.  If you stop working on September 5th,
5  then you get your last paycheck or things like that?
6          THE COURT:  Right.  In other words, should there have
7  been any continuing financial relationship between the parties?
8          MS. DAKER:  No.  He resigned from Starwood.
9          THE COURT:  Right.
10         MS. DAKER:  He resigned from Starwood and he started
11 working at CA Immo.  This is actually the first time I'm
12 hearing about this, he might have had a position at both.
13         THE COURT:  Right.
14         MS. DAKER:  He didn't have a position at Starwood
15 after he left Starwood.
16         THE COURT:  OK.
17         MS. DAKER:  The other thing is, and I'm not going to
18 quarrel with a lot of language because I don't think it is
19 helpful probably to your Honor, but this is a very public --
20 like you can Google this guy's name at CA Immo.  He used to be
21 at Starwood, SOF-11 as a majority shareholder.  Like there are
22 articles.  This wasn't a back-door situation.
23         So to the extent it was just him going over there was
24 discussed, that's in the emails, right, if it is responsive to
25 the other requests.

```
 1              Judge --

 2              THE COURT:  So if I limit the request, then, if I

 3    agree with you on the overbreadth of 169 and if I limit 170 to

 4    the time period that we're talking about, which would limit it

 5    to Starwood records for him for January 2018, wouldn't that be

 6    sufficient?

 7              In other words, to the extent he was asking for the

 8    personnel file, that seems overbroad.  If I limit it to

 9    financial compensation of any form between January 2018 and

10    June 2022, you're telling me it should be none after November

11    2018, right?

12              MS. DAKER:  Right.

13              THE COURT:  So then at best they establish how much he

14    made before he left the company.  So why wouldn't that be a

15    reasonable solution?

16              MS. DAKER:  Because they're not entitled to that,

17    Judge.  Again, it doesn't have any -- what does that have to

18    do --

19              THE COURT:  Their theory is that he is a corporate

20    plant and that he was basically helping breach fiduciary

21    duties.

22              MS. DAKER:  In connection with some votes.

23              THE COURT:  Right.

24              MS. DAKER:  But he didn't vote.

25              THE COURT:  But what if he was manipulating others to
```

1    vote?

2          MS. DAKER:  Judge, the *ex parte* application doesn't

3    say that.  The *ex parte* application says about Mr. Viscius, and

4    this is pages 6 to 7.  It says they appointed one indefensibly,

5    the supervisory board, which he obviously wasn't on,

6    indefensibly appointed one Keegan Viscius to this new position

7    of CIO without his undergoing the customary selection

8    procedure, and authorized him an annual salary of XYZ, which

9    was far more than the salary of the previous, more senior CFOs.

10         So that has nothing to do with what they're talking

11   about here, right.  That is what the supervisory board did with

12   regard to him, right.  Hiring him and how much they paid him,

13   that has nothing to do with how much he did.

14         Page 9, describing Case 1, they said that case is

15   about, in part, the request to nullify resolutions declining

16   special audits into the matters which it raised and were voted

17   down by the majority shareholder, SOF-11, at the 2021 GM,

18   including the appointment and remuneration of Keegan Viscius.

19         So when we look at what they have said those

20   proceedings are about, OK, let's talk about, what are they

21   talking about this guy, right, in those proceedings.

22         THE COURT:  But based upon what you just read to me,

23   isn't that touching upon this issue as to request 170?

24         MS. DAKER:  Oh, no.

25         THE COURT:  The remuneration to him?

1          MS. DAKER:  No, because that's about him getting paid
2     by CA Immo.
3          THE COURT:  Right.  In other words, their theory is in
4     addition to unreasonable or unusual payments from that entity,
5     they're claiming that he may have been paid at the same time by
6     Starwood.
7          MS. DAKER:  Judge, what counsel is claiming here is
8     not what is at issue in the Austrian proceedings, according to
9     them.  That is the point, right.  The discovery here, and we
10    all know this, is supposed to be limited to, right, the
11    Austrian proceedings.  That is the basis of their *ex parte*
12    application.
13         THE COURT:  But isn't it relevant enough to their
14    theory in the Austrian proceeding?
15         MS. DAKER:  Not as they have framed it, Judge.  What
16    he was compensated by Starwood for his work for Starwood.
17         THE COURT:  Under what you are telling me, the answer
18    should be none after November 2018.  So theoretically the only
19    information that would be disclosed is a fairly limited time
20    frame, subject, of course, to a protective order.
21         So in other words, if he was no longer affiliated or
22    had any business relationship with Starwood after November
23    2018, then the answer would be none, and so then no harm no
24    foul.  If there was some compensation maybe with simply as
25    carryover income that they agreed upon in a proper arm's length

1  transaction, fine.  You see my point?

2          So, again, the burden is on you to show me how it is

3  completely irrelevant, and I don't think you can based on that

4  showing.

5          I'll sustain your objection, though, as to 15.

6          I think as to 169 it is overbroad.

7          As to 170, I will compel that for the time period of

8  1/2018 through 6/2022.

9          OK.  That is subject, of course, to the parties'

10  protective order.

11          Anything else?

12          MR. POYER:  I believe at this time, your Honor,

13  reserving -- I'm working through the privilege log and

14  eventually, hopefully, getting to a deposition in this case,

15  where there are some designations via the confidentiality

16  order, like attorneys' eyes only and things like that, that I

17  would reserve on to discuss with the deponent eventually, and

18  if there is an issue there to come back to the court and make

19  that application at that time.

20          THE COURT:  OK.  That's fine.  We'll reserve on

21  anything else, and obviously there is going to be a

22  supplemental production.  We'll see where we are after that.

23          I won't set a new hearing unilaterally without you all

24  conferring and agreeing on when you'd like it down the road.

25          MR. POYER:  Thank you, Judge.

1          MS. DAKER:  Thank you, your Honor.

2          THE COURT:  Thank you very much.

3          If you want to put these rulings in an order, go ahead

4    and do so and file it as a motion for entry of an order and

5    then I will enter it next week.  OK.  If you are both in

6    agreement as to what we did, then you don't need an order.

7    That is fine too because it is on the record.

8          MR. POYER:  Thank you, Judge.

9          MS. DAKER:  Thank you, Judge.

10          THE COURT:  What was that?

11          MR. POYER:  I just made a statement that we would

12    purchase the transcript and allow that to stand as the order.

13          THE COURT:  OK.  That's fine.

14          MR. POYER:  Thank you.

15          (Adjourned)

16

17                  C E R T I F I C A T E

18

19      I hereby certify that the foregoing is an accurate

20    transcription to the best of my ability of the digital audio

21    recording in the above-entitled matter.

22

23    June 29, 2024              s/ Joanne Mancari
                                 Joanne Mancari, RPR, CRR, CSR
24                               Court Reporter
                                 jemancari@gmail.com
25

MR. MILNE: [1]  2/9
MR. POYER: [56]
MS. DAKER: [42]  2/11 2/15 2/18 15/19
16/11 16/13 22/22 23/10 23/15 23/18
26/13 26/16 27/15 27/18 27/20 30/23
31/7 31/23 32/12 32/17 33/16 33/19
45/10 47/20 47/23 48/5 50/3 50/8 50/10
50/14 50/17 51/12 51/16 51/22 51/24
52/2 52/24 53/1 53/7 53/15 55/1 55/9
THE COURT: [93]
THE DEPUTY CLERK: [1]  2/3

'

'2021 [1]  25/19
'21 [4]  23/25 24/1 38/21 39/17
'22 [7]  11/8 14/11 14/18 24/1 24/1 38/22
40/18
'23 [1]  8/10
'unduly [1]  34/10

1

1,133 [1]  9/22
1/2018 [1]  54/8
10 [6]  7/21 19/18 19/21 21/19 21/20
26/25
11 [14]  11/23 11/23 11/24 11/25 12/4
12/15 13/12 28/4 31/12 31/18 33/7 43/25
50/21 52/17
12 [2]  34/17 42/24
12th [1]  33/23
14 [2]  34/8 41/21
15 [1]  54/5
169 [4]  43/16 43/17 51/3 54/6
170 [6]  43/16 44/17 44/17 51/3 52/23
54/7
1782 [3]  4/7 26/1 40/21
18 [2]  17/17 22/3

2

20 [1]  7/20
200 [2]  1/20 48/18
2011 [1]  49/3
2018 [37]  5/3 6/19 6/25 7/1 11/7 11/21
11/25 12/1 12/10 12/12 12/13 12/22
13/23 14/13 23/8 24/8 29/25 30/18 31/3 31/3
31/24 32/5 33/13 38/16 41/9 41/9 41/10
45/10 45/11 46/4 49/3 49/4 51/5 51/9
51/11 53/18 53/23 54/8
2019 [1]  46/4
2020 [1]  46/4
2021 [13]  15/9 23/5 24/21 28/10 31/14
31/25 32/24 33/6 38/20 39/11 39/11 46/5
52/17
2022 [23]  5/4 6/21 7/2 8/9 14/13 14/14
15/5 23/6 25/19 30/23 30/25 33/16 33/21
38/19 39/12 39/12 40/19 40/23 40/25
41/6 41/11 51/10 54/8
2023 [1]  18/6
2024 [6]  1/7 23/22 8/11 17/12 36/8 55/23
21 [1]  42/24
22 [2]  17/11 42/24
22-22437 [1]  2/4
22-CV-22437-BB [1]  1/2
22437 [1]  2/4
22nd [2]  38/2 38/3
23 [1]  43/3
24 [2]  34/4 43/3
25 [1]  43/3
26 [5]  8/9 8/10 12/1 13/23 26/2

26th [1]  8/8
27 [3]  1/7 3/3 8/25
27th [3]  31/23 33/2 33/13
28th [1]  28/8
29 [1]  55/23
2nd [2]  30/24 33/21

3

30 [1]  39/11
300 [2]  10/15 10/24
305-373-6600 [1]  1/16
305-995-5297 [1]  1/21
31st [2]  29/25 30/1
33131 [2]  1/15 1/20
34 [9]  7/21 8/6 8/10 8/10 16/5 19/4
26/25 27/12 34/15
39 [1]  17/17
3rd [5]  4/1 5/12 7/9 7/11 16/7

4

45 [1]  27/17

5

50 [1]  13/24
5297 [1]  1/21
55 [1]  1/8
5th [1]  50/4

6

6/2022 [1]  54/8
636 [1]  22/3
6600 [1]  1/16
6th [2]  24/21 41/3

7

75 [2]  12/5 15/12

8

8,000 [4]  18/4 18/4 24/14 28/3
82 [2]  35/24 36/7
84 [1]  4/15
85 [1]  17/20

A

ABALLI [2]  1/14 2/7
aballi.com [2]  1/16 1/17
abandoned [1]  18/6
ability [3]  28/6 33/8 55/20
able [3]  9/16 18/22 33/1
about [72]
above [1]  55/21
above-entitled [1]  55/21
absent [1]  4/5
according [1]  53/8
accurate [1]  55/19
accusations [1]  16/14
accused [1]  13/16
acquired [5]  28/6 31/14 31/21 31/23 33/1
acquiring [1]  12/10
across [1]  37/7
act [4]  32/7 32/8 32/18 32/18
action [4]  26/3 39/8 40/18 40/21
actions [9]  25/11 25/15 31/9 37/16 38/24
43/24 43/25 44/24 45/5
activities [1]  37/15
actual [2]  42/14 43/6
actually [7]  12/14 12/15 23/22 24/3
29/17 32/9 50/11
adaker [1]  1/17
add [2]  10/5 12/25

addition [1]  53/4
additional [3]  27/22 29/6 42/9
address [8]  9/24 9/24 15/19 35/20 38/20
41/14 47/4 47/5
addresses [2]  7/22 34/16
Adjourned [1]  55/15
adjudicated [2]  22/20 27/19
admissible [3]  36/3 36/5 36/11
adopting [1]  22/18
adoption [2]  28/21 29/11
ADVISERS [3]  1/4 1/5 2/3
advisory [1]  12/19
affiliated [1]  53/21
affirmed [1]  5/11
affirming [1]  34/15
afield [3]  24/19 24/22 24/22
after [14]  5/4 6/9 6/10 7/2 10/1 28/19
30/20 42/18 49/25 50/15 51/10 53/18
53/22 54/22
afternoon [6]  2/6 2/9 2/10 2/11 2/13 2/23
afterwards [2]  15/13 39/7
again [37]  4/23 5/2 5/10 5/12 5/13 5/25
7/3 9/8 9/9 9/12 9/18 9/18 9/18 9/23
14/11 17/19 19/9 19/20 21/13 26/16
27/20 28/15 29/22 30/8 30/18 31/1 33/10
37/17 38/17 39/15 40/12 40/18 48/17
48/22 49/11 51/17 54/2
ago [2]  2/17 16/16
agree [3]  29/6 42/2 51/3
agreed [1]  53/25
agreeing [1]  54/24
agreement [2]  22/1 55/6
agrees [1]  34/23
ahead [5]  3/7 16/12 29/3 29/8 55/3
all [36]  2/15 2/17 3/4 5/1 7/1 8/24 11/7
11/8 11/16 16/15 18/12 20/20 22/4 24/23
25/5 29/10 31/4 34/25 35/11 37/3 39/14
40/14 40/24 43/8 43/17 44/18 45/16
45/20 45/25 47/6 48/11 48/15 49/6 49/24
53/10 54/23
all-encompassing [1]  8/24
all-or-nothing [1]  35/11
allegations [2]  32/2 32/13
alleged [2]  25/11 31/9
allow [5]  12/6 12/8 36/4 42/8 55/12
allowed [2]  31/15 36/15
almost [2]  18/4 24/14
already [6]  10/4 15/17 33/2 33/10 37/23
45/15
also [7]  10/11 21/6 22/20 34/9 34/16
36/1 48/25
alternative [2]  22/21 34/13
alternatively [1]  23/3
although [2]  4/25 19/19
altogether [1]  27/22
am [4]  17/1 17/11 40/1 42/25
ambiguity [3]  38/4 42/2 42/3
amended [8]  8/21 16/21 17/24
amount [4]  3/14 4/12 5/8 9/1
analysis [2]  26/20 29/15
analyze [1]  48/12
analyzed [1]  21/17
analyzing [4]  19/24 20/25 24/7 25/3
ANGELA [2]  1/19 2/11
announce [1]  14/7
annual [1]  52/8
another [2]  3/13 37/8
answer [2]  53/17 53/23
answers [1]  47/8
any [30]  3/24 12/15 17/3 17/14 19/5 19/5

**A**

any... [24]  19/6 21/10 22/12 29/10 29/12
30/19 31/12 33/8 36/10 37/15 40/5 42/25
43/1 45/14 45/21 47/13 48/7 48/18 49/14
50/2 50/7 51/9 51/17 53/22
anybody [1]  2/14
anymore [1]  12/7
anything [1]  7/2 15/7 15/10 29/13 30/11
33/9 33/12 42/5 49/22 54/11 54/21
anyways [1]  13/20
apartment [1]  11/14
apologize [6]  7/21 8/12 42/14 42/21 43/4
45/18
appeal [1]  42/5
appear [3]  8/3 27/1 27/4
appearances [2]  1/12 2/5
appears [2]  7/24 20/16
appellate [1]  42/4
Applicant [1]  25/13
application [15]  1/3 25/6 28/13 29/18
30/3 30/24 31/5 31/8 33/21 48/14 49/21
52/2 52/3 53/12 54/19
apply [1]  6/13
appointed [3]  43/23 52/4 52/6
appointees [2]  25/12 31/10
appointment [1]  52/18
approach [2]  28/2 35/11
appropriate [2]  19/17 24/18
approved [2]  6/20 40/13
April [6]  3/22 4/1 5/12 7/9 7/11 16/7
arbitrarily [1]  41/17
arbitrary [13]  10/1 10/1 15/11 29/20
29/24 29/24 30/2 30/2 30/4 31/1 31/2
31/6 32/16
are [98]
aren't [9]  9/1 18/16 22/17 23/14 37/18
37/18 39/17 43/4 43/5
argue [7]  6/1 10/9 20/3 34/9 34/17 41/17
41/23
argued [2]  17/5 37/25
arguing [4]  5/23 9/11 42/24 43/4
argument [30]  4/5 8/19 11/6 17/2 20/14
20/22 21/4 21/7 23/22 24/1 24/3 24/4
24/8 26/7 26/16 32/1 32/5 32/23 32/24
35/4 35/18 35/20 36/10 36/20 37/22
43/22 43/22 45/13 46/2 46/15
arguments [14]  19/25 22/12 22/25 26/11
26/12 34/20 34/21 34/24 35/4 35/19
36/10 39/18 40/14 41/3
arise [1]  21/23
arm's [1]  53/25
around [1]  13/3
articles [1]  50/22
articulated [2]  29/19 30/19
artificial [1]  15/10
as [56]
ask [4]  39/25 40/1 46/6 46/7
asked [3]  6/18 25/1 46/21
asking [6]  23/7 23/8 23/16 40/5 40/7
51/7
asserted [2]  18/10 18/17
associated [1]  11/16
assumes [1]  4/19
assuming [2]  30/2 41/21
at [89]
attempt [1]  13/2
attempting [1]  16/23
attention [2]  22/2 27/9
attorneys' [1]  54/16

audio [2]  1/10 55/20
audit [2]  13/19 53/6
audits [2]  13/14 52/16
August [9]  6/21 14/12 15/4 30/24 33/21
33/23 38/22 40/22 40/23
Austria [6]  11/10 13/6 14/1 32/14 39/18
48/8
Austrian [23]  5/5 7/25 11/12 11/23 12/3
13/10 13/18 20/16 25/10 32/22 37/2 39/8
43/22 44/1 44/4 44/23 44/25 46/16 47/3
47/15 53/8 53/11 53/14
authorized [1]  52/8
Avenue [1]  1/15

**B**

back [17]  4/23 5/14 5/25 7/12 18/5 20/19
21/20 32/9 33/8 33/14 38/13 38/13 38/14
46/23 47/25 50/22 54/18
back-door [1]  50/22
backed [3]  31/25 33/2 33/10
ball [1]  4/2
Barry [1]  6/7
based [11]  18/6 18/7 24/15 34/6 38/8
41/3 44/22 46/19 46/23 52/22 54/3
basically [7]  4/2 14/12 20/18 23/7 23/16
46/15 51/20
basis [2]  29/19 53/11
batch [1]  5/1
BB [1]  1/2
be [58]
became [4]  28/4 45/24 48/1 49/25
because [52]  4/7 5/1 5/4 5/18 9/3 9/15
10/6 12/14 12/21 12/25 13/16 13/22 15/7
17/2 18/5 18/21 18/24 19/10 20/4 20/13
20/18 21/13 21/17 22/7 23/23 24/10
24/23 25/3 25/23 26/17 27/9 31/7 31/15
32/17 32/25 33/1 37/6 38/20 39/18 41/18
44/1 44/2 46/2 46/18 47/6 47/25 48/22
49/11 50/18 51/16 53/1 55/7
become [4]  28/9 31/13 31/24 45/7
been [24]  2/20 5/12 5/19 5/24 9/8 9/9
9/17 10/7 18/1 18/2 19/13 22/10 32/7
39/14 41/19 41/20 41/21 41/23 44/12
44/14 48/6 50/2 50/7 53/5
before [17]  1/11 3/18 5/3 6/25 9/25
13/22 16/4 21/8 22/10 25/10 29/22 33/25
37/6 39/20 40/15 42/1 51/14
beforehand [2]  12/24 12/25
began [2]  32/5 32/9
begin [1]  12/10
beginning [1]  17/2 17/16
behalf [3]  2/7 2/12 3/12
behest [1]  43/24
being [6]  4/4 21/17 28/16 38/7 44/23
46/19
beings [1]  38/24
believe [18]  7/7 7/13 10/2 12/23 14/21
39/13 40/16 42/13 44/11 46/9 47/5 54/12
benefited [2]  44/24 45/6
best [2]  51/13 55/20
better [1]  39/6
between [12]  12/20 20/5 27/21 38/3
39/22 46/7 47/25 48/19 49/15 50/2 50/7
51/9
beyond [5]  4/6 15/7 15/10 24/15 34/11
big [4]  3/19 24/2 24/8 26/17
billion [1]  13/3
billionaire [2]  13/1 37/11
billionaires [1]  37/6
billions [1]  39/4

Biscayne [1]  1/20
bit [1]  2/24
bite [1]  23/16
black [2]  6/9 6/10
Bloom [21]  2/4 4/5 5/11 7/21 8/17 16/5
19/2 19/4 19/6 19/16 19/21 20/8 22/8
23/7 23/12 26/12 28/15 34/3 34/16 34/23
35/3
Bloom's [3]  26/22 29/11 34/15
Bloom's [3]  26/22 29/11 34/15
board [19]  12/19 13/11 28/7 28/8 31/15
33/1 33/9 36/8 44/2 44/8 45/25 48/2
48/6 48/16 48/23 49/11 49/15 52/5 52/11
boilerplate [2]  34/25 35/10
both [5]  28/21 35/10 35/15 50/12 55/5
Boulevard [1]  1/20
breach [3]  32/2 32/3 51/20
breadth [1]  37/24
bribed [1]  44/23
bring [1]  22/1
broad [4]  8/24 9/3 26/17 36/5
broader [2]  26/2 37/23
broke [1]  3/4
brought [1]  27/9
bucket [2]  3/11 3/13
buildings [1]  11/15
bulk [2]  18/7 20/13
bunch [2]  30/10 31/19
burden [8]  3/16 4/11 5/7 21/12 21/17
37/19 38/9 54/2
burdensome [4]  20/1 20/23 21/14 34/10
business [2]  40/8 53/22
but [55]  3/23 4/8 4/19 6/4 8/18 11/2 11/4
17/11 17/20 18/22 18/25 19/20 20/19
21/4 22/17 24/20 27/11 27/19 28/1 28/5
28/17 30/12 31/4 31/13 31/14 31/17 32/1
32/10 32/20 33/20 33/20 35/20 35/23 36/13
36/18 37/3 39/16 39/19 40/15 41/4 42/2
42/11 42/24 43/4 43/12 44/23 46/13
47/24 48/11 48/12 49/23 50/19 51/24
51/25 52/22 53/13
buy [1]  14/6

**C**

C-A [1]  11/12
CA [24]  11/12 11/25 12/6 12/15 12/19
12/21 13/11 13/12 13/24 39/23 44/8 44/8
47/4 47/14 48/1 48/19 48/22 49/4 49/8
49/10 50/1 50/11 50/20 53/2
calculated [1]  36/11
call [2]  3/4 38/15
called [1]  13/13
Calling [1]  2/3
came [4]  28/19 28/19 36/8 49/15
camera [2]  40/1 43/9
can [14]  4/21 4/24 5/20 6/4 8/7 17/15
31/4 38/19 39/9 42/10 42/12 43/13 50/20
54/3
can't [1]  11/22
carryover [1]  53/25
case [31]  1/2 1/19 2/3 2/4 3/22 7/25
16/15 20/16 22/5 23/21 23/21 24/23 25/7
25/21 25/21 25/22 29/23 31/8 34/19 35/1
36/8 37/23 39/7 39/10 39/11 39/12 40/6
42/5 52/14 52/14 54/14
cases [4]  25/21 25/22 26/5 39/10
categories [3]  17/25 18/17 27/13
category [1]  17/22
cc'd [1]  10/22
CEO [3]  6/7 11/19 12/21
certain [3]  6/24 14/4 17/25

**C**

certainly [4] 21/18 22/14 24/14 26/23
certify [1] 55/19
CFO [1] 12/21
CFOs [1] 52/9
chairman [2] 6/7 11/19
challenge [1] 9/4
challenging [6] 8/22 10/19 10/22 10/23 18/16 43/5
chance [2] 43/7 43/8
checking [1] 45/9
chief [3] 1/11 44/8 45/7
choice [4] 35/9 35/9 35/15 35/17
chose [3] 27/13 37/4 49/4
Christian [1] 3/5
CIO [5] 12/21 44/8 48/1 50/1 52/7
civil [4] 2/4 34/12 35/6 35/22
civility [1] 21/24
claiming [2] 53/5 53/7
claims [8] 7/25 13/5 13/9 20/16 25/13 40/7 48/13 48/13
clarification [1] 48/3 48/5 48/16
clear [8] 8/20 10/16 15/25 25/22 26/5 35/2 43/4 48/25
clearly [1] 22/19
client [12] 5/17 6/2 9/16 12/9 28/4 30/8 37/4 37/12 45/1 45/6 46/12 47/15
close [1] 41/4
collected [2] 49/12 49/13
come [4] 5/25 6/8 6/12 54/18
coming [1] 2/25
communications [15] 7/23 20/5 20/10 24/5 40/3 46/6 46/7 46/17 47/25 48/18 48/21 49/7 49/15 49/18 49/19
companies [1] 11/20
company [14] 6/13 11/12 11/23 12/7 13/3 18/15 25/16 28/6 37/9 44/23 47/3 50/1 50/1 51/14
compel [4] 4/3 17/13 39/16 54/7
compelling [1] 42/10
compensated [1] 53/16
compensation [11] 13/11 18/14 44/19 47/11 47/13 49/2 49/5 49/23 50/2 51/9 53/24
complaint [2] 24/24 25/7
complaints [1] 30/9
completely [4] 9/2 37/5 37/7 54/3
conclusion [1] 21/20
conducted [1] 19/16
confer [1] 17/3
conferred [1] 27/8
conferring [1] 54/24
confident [1] 11/4
confidentiality [2] 3/16 54/15
confirming [1] 7/12
conflict [1] 44/3
conflicted [1] 13/18
conflicts [1] 12/19
connection [1] 51/22
consent [1] 4/25
consistent [1] 22/13
conspiracy [3] 32/8 32/9 32/10
contemplated [1] 4/4
contempt [3] 3/12 10/8 16/15
contend [1] 14/1
contention [3] 12/3 12/17 22/1
context [2] 19/17 21/5
continued [1] 4/17
continuing [1] 50/7
contract [1] 49/10

contrary [2] 43/25 44/1
contrast [1] 20/10
contravention [1] 44/25
controlled [2] 25/12 31/11
controlling [2] 13/2 37/8
cooperation [1] 21/24
corporate [6] 28/23 32/4 34/9 34/13 43/23 51/19
correct [4] 8/14 20/25 21/22 23/14
correctly [1] 35/16
costs [1] 6/2
could [3] 4/15 33/22 39/6 45/18
couldn't [2] 46/11 46/13
counsel [25] 2/5 2/21 5/13 5/17 10/2 10/21 10/21 16/19 18/8 18/20 19/4 19/18 21/1 24/23 26/23 29/4 31/16 35/7 36/17 36/18 36/19 43/4 43/8 46/21 53/7
counsel's [4] 17/2 21/7 40/2 42/25
countless [1] 20/5
couple [7] 2/17 17/8 25/1 30/14 37/10 37/10 41/8
course [3] 11/4 53/20 54/9
court [30] 1/1 1/23 3/12 3/17 5/7 5/7 5/12 5/20 5/25 6/1 6/8 6/9 6/13 6/20 10/9 13/10 14/19 16/24 17/2 18/8 21/21 21/23 25/10 26/21 34/23 40/2 40/13 43/22 54/18 55/24
court's [2] 10/8 15/16
courts [1] 12/3
covered [1] 28/3
crafted [3] 8/3 27/1 27/4
created [2] 9/25 15/13
creating [1] 39/17
crime [2] 32/20 40/9
criticized [1] 19/1
CRR [2] 1/23 55/23
CSR [2] 1/23 55/23
currently [1] 10/25 16/23
cushion [3] 28/11 28/14 29/22
customary [1] 52/7
cutoff [7] 10/1 10/1 12/11 15/11 29/20 29/21 37/5
cutoffs [1] 16/2
cutting [1] 26/8
cutting-off [1] 26/8
CV [1] 1/2

**D**

DAKER [5] 1/19 2/11 4/16 5/24 42/23
Daker's [1] 12/11
damaged [1] 47/15
date [39] 6/19 6/20 8/5 8/7 10/1 10/2 11/7 12/11 12/14 14/17 14/17 14/18 14/19 14/22 14/22 14/24 15/1 15/4 15/7 16/2 30/3 30/5 30/19 31/2 31/6 32/9 32/15 32/16 33/14 33/18 33/19 38/2 38/11 38/12 38/19 40/12 40/14 40/17 41/7
dated [2] 5/3 6/25
dates [3] 29/24 30/4 39/14
day [1] 28/8
days [3] 2/17 16/16 41/21
de [6] 16/5 19/16 34/4 34/15 35/24 36/7
DE-24 [1] 34/4
DE-34 [2] 16/5 34/15
DE-82 [2] 35/24 36/7
deal [4] 3/15 16/14 17/14 45/5
dealing [5] 5/1 9/19 9/20 14/13 22/19
deals [3] 3/12 3/13 14/21
dealt [9] 8/18 9/8 9/9 16/5 16/6 31/19

**M** (heading continued)

34/5 34/6 35/3
December [4] 29/25 30/1 39/1 39/7
decided [2] 34/3 35/16
declining [1] 52/15
defend [1] 40/6
defendant [2] 15/6 40/25
defenses [1] 48/13
definitely [3] 31/17 37/25 47/12
definitions [3] 8/24 9/3 18/16
delist [1] 12/6
delve [1] 26/18
depends [2] 50/3
deponent [2] 29/9 54/17
deposition [2] 17/16 54/14
depressed [1] 14/6
describing [1] 52/14
description [2] 24/23 25/7
descriptions [1] 43/7
designation [1] 10/19
designations [1] 54/15
detailed [1] 18/19
detriment [1] 45/6
devaluing [1] 14/3
develop [1] 11/13
did [33] 2/18 4/25 6/15 6/21 7/9 15/14 17/24 18/5 19/12 19/4 19/5 22/24 23/11 24/5 24/10 26/10 33/12 36/15 41/14 45/7 46/6 46/7 46/9 46/10 46/11 48/7 48/15 48/24 49/7 49/13 52/11 52/13 55/6
didn't [20] 3/17 19/3 21/18 22/14 23/11 26/7 26/8 26/18 27/19 28/7 28/9 29/21 31/13 31/24 35/7 35/8 35/14 43/3 50/14 51/24
difference [1] 27/20
different [5] 5/15 26/6 26/16 31/19 43/2
digital [1] 1/10 55/20
disagree [2] 4/8 35/23
disagreements [1] 43/15
disclosed [2] 44/4 53/19
discover [2] 8/3 27/1
discovery [19] 1/10 19/10 21/22 22/4 22/12 23/3 23/24 25/24 26/1 26/2 27/5 27/7 34/11 35/1 35/5 35/24 36/5 48/11 53/9
discuss [2] 39/5 54/17
discussed [5] 12/24 15/20 45/3 45/15 50/24
discussing [2] 10/18 39/24
discussion [3] 38/3 39/22 39/22
discussions [3] 17/3 18/7 46/21
dispose [1] 22/11
disposed [4] 27/6 28/17 29/12 38/8
disposes [1] 41/12
dispositive [1] 28/22
dispute [3] 41/9 45/22 45/23
disputed [1] 41/8
disputes [2] 27/6 27/7
DISTRICT [3] 1/1 1/1 22/4
do [32] 2/22 3/24 4/12 5/8 7/12 11/18 15/14 17/20 17/24 20/19 24/17 26/14 27/16 27/23 28/25 33/22 33/24 35/14 37/2 37/6 37/9 37/22 39/6 40/25 42/7 42/11 45/25 47/18 51/18 52/10 52/13 55/4
docket [3] 19/4 26/25 28/13
document [4] 15/13 40/5 42/15 42/17
documentation [1] 46/10
documents [58]
does [7] 11/12 11/12 12/25 36/5 38/4 46/22 51/17

## D

doesn't [8]  6/13 9/24 9/24 20/24 24/25 26/1 51/17 52/2
doing [6]  11/21 12/18 13/17 14/2 15/11 22/13
dollar [2]  13/3 37/8
dollars [3]  37/10 37/11 39/4
don't [42]  3/1 3/24 9/14 9/15 10/14 14/14 14/15 17/10 18/21 20/19 20/21 23/15 23/18 24/19 24/22 24/24 24/25 28/15 30/11 32/10 32/17 32/20 35/23 36/12 36/13 37/2 37/3 37/18 37/19 38/11 39/7 40/14 43/8 46/18 47/1 47/3 47/5 47/6 50/4 50/18 54/3 55/6
done [6]  4/7 9/17 17/15 18/2 35/14 38/5
door [2]  17/23 50/22
dot [4]  19/19 19/19 21/8 21/8
dotted [1]  19/20 21/8
down [4]  13/13 14/20 52/17 54/24
draconian [2]  41/25 42/4
drafted [2]  16/17 16/18
during [2]  45/2 46/6
duties [3]  49/8 51/21
duty [2]  32/3 32/3

## E

each [2]  4/25 24/10
earlier [1]  32/9
ease [1]  32/21
ECF [3]  7/20 7/21 8/6
EDWIN [1]  1/11
either [4]  24/22 43/5
else [5]  2/14 2/22 39/6 54/11 54/21
email [3]  10/3 47/4 47/4
emails [3]  49/9 49/23 50/24
employed [4]  44/12 44/14 45/4 46/4
employee [8]  18/15 43/19 43/20 44/13 44/15 45/23 45/24 49/2
employment [5]  18/14 43/18 45/17 45/21 49/6
encompass [2]  8/25 47/6
encompassing [1]  8/24
end [6]  3/25 17/16 35/20 38/14 38/21 41/7
enough [2]  42/3 53/13
enriching [1]  14/9
enter [1]  55/5
entered [6]  6/19 7/5 36/7
entire [2]  49/12 49/13
entirely [1]  11/3 37/3
entirety [1]  23/3
entities [10]  2/12 11/17 20/3 21/9 21/11 28/5 31/12 34/9 43/18 47/13
entities' [3]  34/19 34/21 34/24
entitled [12]  15/9 18/13 23/24 25/24 29/6 36/24 37/12 40/9 46/5 47/16 51/16 55/21
entity [3]  28/5 31/13 53/4
entry [6]  10/17 10/20 19/4 26/25 28/13 55/4
equally [1]  40/16
equity [2]  11/17 13/1
equivalent [1]  25/6
erred [1]  34/17
ESQ [3]  1/13 1/14 1/19
essentially [3]  32/2 34/20 34/25
establish [1]  51/13
estate [1]  11/14
etc [4]  17/5 20/21 22/12 24/13
even [15]  10/18 10/21 16/1 19/13 22/10 26/7 26/22 31/13 31/24 33/8 39/17 39/21 39/25 39/25 47/10
eventually [2]  54/14 54/17
ever [3]  8/19 40/1 48/16
every [7]  5/22 5/23 5/23 16/15 27/16 28/17 28/22
everything [4]  24/2 27/6 29/12 47/23
evidence [3]  36/3 36/11 46/14 48/14
ex [10]  25/5 28/12 30/3 30/24 31/8 48/14 49/21 52/2 52/3 53/11
exactly [1]  15/1
exceeded [1]  35/5
except [1]  30/14
exception [1]  40/10
excessive [2]  4/11 5/8
exchanged [1]  20/5
executive [3]  12/20 47/2 47/14
exist [1]  14/15
existed [1]  14/8
expects [1]  21/23
expedite [1]  42/10
expense [1]  25/16
experience [1]  44/22
explain [2]  21/11 23/19
extent [10]  4/10 21/9 21/25 38/15 49/9 49/10 49/14 49/20 50/23 51/7
eyes [1]  54/16

## F

face [2]  21/1 32/13
fact [1]  22/17
factor [6]  19/23 19/25 20/14 20/23 21/15 34/22
factors [2]  34/6 34/6
fair [1]  37/5
fairly [1]  53/19
fairness [1]  38/1
fall [2]  45/14 48/20
far [6]  5/18 24/19 24/21 24/22 31/25 52/9
fast [1]  33/23
favor [1]  41/10
favored [1]  44/1
Federal [3]  34/11 35/6 36/4
fiduciary [4]  32/2 32/3 45/24 51/20
fight [1]  42/14
file [4]  6/1 49/6 51/8 55/4
filed [12]  2/17 16/16 19/13 26/3 30/3 30/24 33/20 39/8 39/10 39/11 39/12 40/21
filing [1]  40/17
financial [2]  50/7 51/9
find [6]  7/17 8/7 38/11 39/9 42/8 47/7
finding [1]  34/17
findings [1]  4/8
finds [1]  21/21
fine [7]  9/5 24/13 25/2 54/1 54/20 55/7 55/13
finish [1]  15/21
firm [3]  11/17 11/18 13/2
first [18]  8/18 12/14 15/25 16/1 21/7 24/20 26/8 28/12 29/22 29/23 31/5 32/7 32/18 32/18 32/19 32/24 47/19 50/11
FL [2]  1/15 1/20
FLORIDA [3]  1/1 1/6 13/1
focused [1]  21/16
folks [1]  49/12
following [3]  2/2 20/9 28/8
force [1]  27/22
foreclose [2]  21/18 22/11
foregoing [1]

foreign [3]  25/10 25/14 37/7
form [2]  47/24 51/9
formal [1]  6/5
former [3]  18/15 43/20 45/24
forth [1]  36/25
forward [2]  4/2 14/11
foul [1]  53/24
found [1]  7/10
four [1]  14/14
fourth [5]  19/23 19/25 20/23 21/15 34/22
frame [11]  3/20 6/18 8/19 9/16 16/4 35/13 36/24 38/16 45/3 45/15 53/20
framed [1]  53/15
frames [1]  41/16
frankly [4]  3/20 8/18 20/13 28/18
fraud [1]  40/10
Friday [1]  28/20
friendly [1]  44/7
front [9]  9/10 9/10 19/5 19/11 19/12 19/14 26/4 26/20 38/18
fully [1]  28/22
FUND [2]  1/4 2/4
further [5]  22/4 27/5 27/6 46/1 50/2

## G

gargantuan [2]  4/13 5/9
gave [2]  9/21 24/23
general [6]  1/4 1/5 12/9 18/25 25/18 40/7
generally [2]  16/3 42/2
German [1]  44/23
get [28]  5/14 6/15 6/21 11/3 15/6 15/16 18/21 21/20 24/10 24/11 24/19 24/22 26/3 27/21 35/18 36/16 36/22 36/22 36/23 37/1 41/7 42/5 42/18 43/8 46/10 48/24 49/7 50/5
getting [4]  19/1 24/16 53/1 54/14
give [7]  6/11 6/25 7/2 7/16 8/7 36/13 42/11
given [2]  11/4 28/3
gives [1]  29/21
GM [1]  52/17
gmail.com [1]  1/24 55/24
go [20]  3/7 4/10 4/11 4/24 7/12 8/22 16/12 19/21 20/2 25/20 29/3 29/8 32/8 33/4 37/6 37/9 41/4 41/6 46/1 55/3
goes [4]  4/6 5/14 16/24 27/5
going [32]  3/19 5/2 6/24 7/1 8/25 9/1 9/2 9/4 11/4 13/2 14/10 16/14 17/19 19/21 24/6 27/5 27/7 27/23 30/15 32/6 32/8 33/3 38/13 38/13 39/5 39/25 39/25 40/1 47/4 50/17 50/23 54/21
golden [1]  31/14
good [8]  2/6 2/9 2/10 2/11 2/13 2/20 2/23 26/8
Google [1]  50/20
got [6]  6/21 48/25 49/9 49/17
gotten [2]  24/14 25/1
grant [3]  22/20 23/2 40/25
greatly [1]  16/20
gritty [1]  24/16
Group [1]  6/8
guess [5]  16/14 25/7 32/1 41/13 47/23
guy [1]  52/21
guy's [1]  50/20

## H

had [24]  5/7 5/7 5/12 8/23 12/1 13/23 16/2 16/3 17/4 28/18 32/25 33/8 33/9 35/11 36/19 36/19 36/20 41/13 43/7 43/8

**H**

had... [4]  44/12 44/14 50/12 53/22
hadn't [2]  19/13 22/10
halfway [2]  13/3 37/7
happen [1]  49/16
happened [5]  10/4 23/24 23/25 29/25
29/25
happening [3]  5/16 13/21 30/1
happy [3]  20/19 30/11 30/12
harm [1]  53/23
harmed [1]  44/25
has [23]  4/7 4/10 4/11 4/13 5/19 6/9 8/17
8/17 9/8 10/4 18/2 25/6 25/14 26/23
26/23 30/8 35/15 37/12 42/23 43/8 48/6
52/10 52/13
hate [1]  3/23
hats [1]  46/15
have [74]
haven't [7]  15/12 29/19 30/19 36/10 43/7
47/6 47/23
having [2]  28/16 38/5
he [50]  2/25 6/13 31/17 43/19 43/23
44/5 44/5 44/7 44/12 44/14 44/21 44/23
45/4 45/4 45/7 45/22 45/23 45/24 46/3
46/4 46/15 47/12 47/14 48/6 48/6 48/15
48/22 49/3 49/3 49/4 49/25 50/8 50/10
50/10 50/12 50/14 50/15 50/20 51/7
51/13 51/14 51/19 51/20 51/24 51/25
52/5 52/13 53/5 53/16 53/21
he's [1]  47/4
hear [2]  6/7 17/1
heard [3]  16/1 36/10 38/10
hearing [24]  1/10 2/21 3/9 3/22 4/1 16/6
16/7 16/15 17/12 17/12 17/18 18/3 28/18
28/20 29/2 30/9 30/10 35/7 36/9 36/12
38/3 38/4 50/12 54/23
hearings [2]  17/8 17/9
held [1]  2/2
helpful [2]  3/9 50/19
helping [1]  51/20
helps [1]  23/19
hence [1]  19/7
HENDRIK [2]  1/14 2/7
her [18]  4/4 4/8 5/14 7/6 7/8 19/5 19/14
21/5 21/19 21/19 22/10 22/23 22/24 27/9
29/11 36/19 36/20 38/5
here [26]  3/21 4/23 5/16 6/12 9/10 9/18
9/19 11/10 17/12 20/9 24/3 24/4 24/24
25/19 25/22 26/3 26/13 28/5 31/13 31/18
37/10 40/16 42/23 52/11 53/7 53/9
here's [1]  23/18
hereby [1]  55/19
hey [5]  8/23 10/3 15/14 24/6 26/17
high [3]  5/19 11/14 23/20
high-quality [1]  11/14
him [19]  6/8 6/12 6/14 45/25 46/8 48/4
49/14 49/15 49/18 49/22 50/2 50/23 51/5
52/8 52/12 52/12 52/12 52/25 53/1
Hiring [1]  52/12
his [20]  6/13 43/20 43/25 44/2 44/3 44/3
44/22 45/16 45/20 49/5 49/5 49/6 49/8
49/8 49/9 49/14 49/23 49/23 52/7 53/16
hmilne [1]  1/17
hold [1]  40/16
holder [1]  31/9
holding [1]  46/22
holdings [1]  14/4
honestly [2]  18/7 49/20
Honor [47]  2/6 2/11 2/18 2/23 3/2 3/15
3/23 3/25 4/17 6/9 7/7 7/16 7/20 8/11

8/20 8/23 9/5 9/11 10/3 11/1 15/2 15/13
18/8 18/11 18/17 19/9 19/18 23/20 24/6
24/25 26/4 26/23 34/1 34/4 35/2 35/15
35/19 35/23 36/8 42/6 45/10 45/18 46/2
49/10 50/19 54/12 55/1
Honor's [2]  17/5 47/8
HONORABLE [1]  1/11
hope [1]  48/9
hopeful [1]  11/3
hopefully [2]  43/12 54/14
hoping [1]  48/9
host [1]  26/6
hour [1]  5/23
house [1]  10/20
how [14]  11/4 22/25 24/6 24/18 26/14
36/14 39/5 40/6 45/16 45/20 51/13 52/12
52/13 54/2
human [1]  38/24
hundreds [1]  39/4

**I**

I'll [7]  18/2 21/3 21/20 23/19 37/17 40/24
54/5
I'm [26]  3/19 11/2 11/3 16/14 17/19
18/25 19/20 20/19 20/25 26/13 27/5
31/12 35/7 39/25 39/25 40/5 40/7 41/10
42/10 42/20 44/2 44/18 45/9 50/11 50/17
54/13
I've [2]  25/1 38/10
I-M-M-O [1]  11/13
i.e [1]  23/5
idea [1]  16/2
if [71]
ignoring [1]  22/17
illegal [11]  12/4 12/4 12/18 14/2 15/8
15/8 25/11 25/15 31/9 37/15 37/15
illegally [4]  13/12 13/15 32/22 32/25
Immo [24]  11/12 12/1 12/6 12/16 12/19
12/21 13/11 13/12 13/25 39/23 44/8 44/8
47/4 47/14 48/1 48/19 48/22 49/4 49/8
49/10 50/1 50/11 50/20 53/2
important [4]  19/20 21/6 25/23 47/10
imposes [1]  21/11
improper [3]  13/18 41/22 41/23
improperly [3]  13/13 33/6 33/7
in [169]
in-house [1]  10/20
inboxes [2]  49/12 49/13
INC [1]  1/5
include [1]  7/9
included [1]  7/4
includes [2]  14/3 39/22
including [5]  12/18 18/8 28/22 48/4
52/18
income [1]  53/25
incumbent [1]  21/10
indeed [1]  45/4
indefensibly [2]  52/4 52/6
individual [1]  39/3
individuals [1]  20/6
indulgence [1]  3/25
influence [1]  33/9
influenced [5]  31/18 32/22 32/25 33/7
33/7
information [7]  8/3 18/14 18/14 27/1 36/2
49/2 53/19
initial [1]  6/18 11/11 37/23 40/13
initially [1]  31/22
installed [1]  47/2
instances [1]  40/10

Intel [7]  18/23 19/25 20/14 20/23 21/15
21/16
intended [3]  22/8 22/11 28/21
intending [1]  9/5
interest [4]  12/20 13/2 13/16 44/3
interesting [1]  18/24
interests [1]  25/15
interpret [2]  17/10 28/16
interpreted [1]  33/20
interpreting [1]  28/16
intervention [1]  16/24
into [6]  6/8 18/21 26/19 37/1 37/6 52/16
intrusive [3]  20/1 20/23 21/14
investment [4]  11/17 44/8 44/10 45/8
INVESTMENTS [3]  1/4 1/5 2/4
involve [1]  13/12
involved [1]  10/19
involves [1]  13/10
irrelevant [5]  4/11 5/4 9/3 43/2 54/3
is [206]
isn't [9]  24/3 24/4 27/12 32/15 38/25
39/5 49/21 52/23 53/13
issue [21]  11/12 11/12 16/3 25/3 28/17
28/22 29/15 30/7 38/6 38/20 41/8 41/13
41/13 41/15 42/4 42/12 47/11 47/11
52/23 53/8 54/18
issued [1]  6/9
issues [19]  3/10 3/14 3/16 8/4 9/19 9/20
9/21 10/11 11/2 16/20 16/21 16/22 16/25
18/20 18/22 21/23 26/6 27/2 27/2
it [139]
it's [18]  4/24 5/10 5/20 9/9 10/17 15/15
15/15 18/4 20/22 23/19 25/2 25/4 25/23
26/2 26/16 31/7 33/10 41/22
items [1]  9/22
its [7]  1/4 10/14 23/2 25/12 25/15 25/16
31/10

**J**

January [11]  6/19 29/24 30/1 31/2 31/3
36/8 38/16 41/9 41/10 51/5 51/9
jemancari [2]  1/24 55/24
Joanne [3]  1/23 55/23 55/23
Joint [3]  7/13 16/16 17/4
JOSHUA [2]  1/13 2/6
jpoyer [1]  1/16
judge [130]
Judge's [2]  19/8 22/4
judges [3]  28/17 35/10 35/15
July [2]  17/16 31/25
jumped [1]  21/8
June [14]  1/7 17/16 18/19 38/2 38/2 38/3
39/10 39/12 40/18 40/19 41/6 41/11
51/10 55/23
just [39]  4/20 4/25 5/20 7/12 9/1 9/3 9/14
12/21 15/21 15/24 17/7 19/2 19/16 21/4
24/11 25/4 26/18 30/10 31/2 32/20 32/20
32/25 33/13 33/16 34/5 36/13 37/9 37/19
38/23 40/7 45/9 47/20 47/25 48/20 48/25
49/12 50/23 52/22 55/11

**K**

KALIL [2]  1/14 2/7
Keegan [3]  43/21 52/6 52/18
kind [20]  3/10 3/16 3/19 4/25 8/17 9/6
16/3 20/18 24/2 24/7 24/11 24/16 25/5
26/17 26/18 35/10 43/23 48/9 49/6 49/24
know [20]  3/24 6/3 12/23 12/24 16/3
18/21 24/25 26/23 26/23 29/20 32/10
39/7 46/18 47/6 48/9 48/10 48/11 48/11

## K

know... [2]  50/4 53/10
knows [1]  33/19

## L

L.P [1]  1/4
lack [1]  44/22
lacks [2]  35/25 36/1
language [2]  19/20 50/18
large [1]  46/11
last [21]  2/21 15/25 16/6 17/5 17/8 17/9
17/12 18/2 20/2 26/24 29/2 30/19 30/20
30/22 30/23 33/16 33/17 33/24 37/17
38/20 50/5
later [3]  4/17 8/1 28/9
latter [1]  47/18
law [9]  13/18 23/1 32/3 32/22 44/1 44/4
44/25 46/16 47/15
lawsuits [1]  25/14
lawyer [4]  10/18 10/20 10/21 10/21
lawyers [1]  39/22
lay [1]  24/20
lead [2]  36/2 36/11
least [7]  4/1 10/9 23/13 31/3 38/14 39/2
41/5
leave [1]  4/17
leaves [1]  6/25
lectern [1]  3/4
left [5]  17/23 28/25 49/25 50/15 51/14
legality [1]  27/2
length [1]  53/25
less [1]  31/6
let [5]  2/16 2/19 2/21 10/16 15/21
let's [4]  24/2 27/23 33/8 52/20
level [1]  23/20
lie [1]  40/11
like [34]  3/17 3/23 6/6 6/6 6/8 10/12 11/2
11/15 11/18 12/1 12/21 13/22 14/24
15/19 16/4 17/5 18/15 18/17 23/24 28/16
30/11 33/12 33/23 37/6 39/20 43/10 48/8
48/9 50/5 50/20 50/21 54/14 54/16 54/24
limit [11]  23/3 23/7 23/8 23/22 23/24
24/2 26/1 51/2 51/3 51/4 51/8
limitation [1]  20/21
limitations [1]  20/17
limited [11]  3/14 4/13 5/9 7/23 18/10
20/10 24/5 26/1 32/7 53/10 53/19
limits [1]  30/17
line [2]  17/17 26/24
lines [1]  17/20
listed [1]  12/7
litigated [1]  7/6
litigation [4]  10/18 39/18 39/24 40/6
little [3]  4/17 11/1 30/15
live [1]  35/16
LLP [1]  1/19
log [16]  9/20 9/22 9/23 10/5 10/12 10/14
10/16 10/20 16/22 18/19 18/20 39/21
40/11 41/20 42/9 54/13
logged [1]  10/13
logic [1]  38/12
longer [1]  53/21
look [12]  8/20 20/19 21/19 22/18 22/23
25/5 26/22 27/23 32/17 38/9 39/20 52/19
looked [1]  26/24
looking [3]  19/18 19/24 42/20
lost [4]  4/20 36/16 37/20 37/23
lot [8]  8/21 26/24 38/25 47/24 48/10
48/24 49/17 50/18
love [2]  48/10 48/11

low [1]  5/19
lower [2]  14/5 14/5
Luxembourg [1]  28/6 31/13

## M

made [10]  4/7 4/20 26/10 26/11 37/20
40/15 41/22 46/22 51/14 55/11
magically [1]  14/7
magistrate [12]  1/11 4/5 16/5 19/8 21/21
22/2 22/4 22/5 34/2 34/19 34/24 35/3
majority [13]  13/22 13/24 25/11 25/14
28/9 31/8 31/10 31/13 31/24 39/5 48/22
50/21 52/17
make [14]  3/15 3/24 8/20 15/24 21/16
24/10 26/7 26/10 26/14 35/11 36/14 43/3
48/25 54/18
makes [2]  25/22 26/5
making [3]  22/12 24/3 24/4
man's [1]  49/2
management [1]  43/20
Mancari [3]  1/23 55/23 55/23
maneuvers [1]  12/5
manipulating [1]  51/25
manipulation [1]  14/3
many [5]  4/19 9/1 9/12 20/3 26/14
market [1]  37/7
material [1]  25/19
matter [8]  7/23 7/24 20/7 20/11 20/15
20/21 48/8 55/21
matters [3]  22/5 23/4 52/16
may [31]  4/8 4/19 5/4 7/2 8/8 8/9 8/10
11/8 14/8 14/8 14/12 14/17 15/9 16/11
17/11 18/22 22/1 23/5 23/6 24/21 30/23
32/24 33/6 33/16 38/6 41/3 41/4 42/4
43/9 47/15 53/5
maybe [3]  6/12 39/5 53/24
me [18]  2/16 2/19 2/21 2/22 7/16 8/5 8/7
10/2 10/16 11/2 15/19 15/21 17/19 41/14
51/10 52/22 53/17 54/2
mean [3]  30/17 33/20 46/22
meaning [2]  5/19 38/19
means [4]  10/2 30/3 33/20 46/24
measure [2]  32/15
meaty [1]  30/13
mechanics [1]  24/12
meet [1]  17/3
meetings [2]  25/18 48/24
member [1]  47/3
members [6]  12/20 13/11 33/10 48/23
49/11 49/16
mention [1]  17/3 22/14 24/13
mentioned [1]  7/9
met [1]  27/8
Miami [3]  1/6 1/15 1/20
mic [1]  37/7
middle [1]  43/20
might [8]  3/9 10/25 37/16 39/13 40/11
46/25 47/1 50/12
million [2]  37/10 37/10
millions [1]  39/4
MILNE [4]  1/14 1/14 2/7 2/7
mind [1]  39/2
minimum [2]  47/12 47/16
minority [2]  12/8 13/17
minute [2]  5/22 21/4
minutes [1]  5/23
misgovernance [1]  32/4
missing [2]  17/13 17/14
moment [1]  42/20
Monday [1]  28/20

money [3]  6/2 38/25
month [1]  30/20
months [3]  7/1 14/13 14/14
months' [1]  41/8
more [18]  4/10 4/21 23/23 24/10 24/11
24/17 24/18 26/14 28/11 28/13 32/15
36/17 38/9 38/11 39/17 47/10 52/9 52/9
most [2]  20/20 38/19
mostly [1]  20/6
motion [14]  6/3 6/5 19/14 22/9 22/19
22/21 23/2 26/18 27/9 27/21 34/5 34/7
34/16 55/4
movant's [1]  38/12
movants [1]  23/14
move [5]  2/24 4/1 25/17 27/14 33/25
Mr. [10]  6/7 11/19 17/18 43/18 44/19
45/3 48/1 48/15 48/21 52/3
Mr. Barry [1]  6/7
Mr. Poyer [1]  17/18
Mr. Sternlicht [1]  11/19
Mr. Viscius [7]  43/18 44/19 45/3 48/1
48/15 48/21 52/3
Ms. [4]  4/16 5/24 12/11 42/23
Ms. Daker [3]  4/16 5/24 42/23
Ms. Daker's [1]  12/11
much [6]  24/18 38/11 51/13 52/12 52/13
55/2
multibillion [1]  37/8
my [6]  9/13 30/8 39/2 46/21 54/1 55/20

## N

name [2]  43/20 50/20
named [1]  11/23
narrow [1]  18/17
narrowed [1]  16/20
nature [1]  32/4
necessarily [3]  3/17 47/1 47/5
necessary [2]  6/5 6/6
need [10]  2/22 3/1 16/23 18/21 26/14
36/5 37/2 39/6 45/25 55/6
needs [2]  20/20 34/18
negotiations [1]  49/10
neither [1]  23/11
never [6]  17/3 25/1 27/8 27/8 27/9 48/6
new [2]  52/6 54/23
next [8]  17/11 17/12 21/8 22/3 33/25
41/13 42/12 55/5
nilly [1]  37/9
nitty [1]  24/16
no [29]  1/2 2/4 2/15 2/25 4/21 5/6 7/3
7/20 7/21 8/6 12/23 16/2 18/1 20/6 21/1
21/15 24/4 29/12 29/15 29/21 39/2 45/22
48/5 50/8 52/24 53/1 53/21 53/23 53/23
none [3]  51/10 53/18 53/23
normally [1]  35/22
Nos [1]  42/24
not [71]
noted [3]  6/24 7/13 35/10
notes [1]  35/23
nothing [6]  28/25 29/25 29/25 35/11
52/10 52/13
notion [1]  22/8
November [6]  45/10 45/11 49/4 51/10
53/18 53/22
novo [1]  19/16
now [32]  2/25 3/3 4/2 4/23 5/2 5/6 8/12
10/12 11/1 11/21 13/23 15/20 16/17 18/5
18/21 18/25 19/18 24/16 32/10 35/7
35/14 35/18 36/16 38/7 38/7 39/18 41/14
41/23 42/10 42/12 43/19 45/3

## N

nullify [1]  52/15
number [4]  10/6 42/1 42/1 46/12
numerous [1]  25/15

## O

object [2]  21/9 36/15
objected [1]  16/4
objecting [1]  38/10
objection [30]  5/10 17/21 18/12 19/5
20/8 20/12 20/12 21/14 21/16 22/23
23/14 23/19 23/20 29/16 29/17 29/17
35/25 37/20 37/21 38/7 38/10 38/16
38/17 46/19 46/22 46/23 49/1 49/1 49/4
54/5
objections [37]  3/13 3/14 3/20 4/20 5/1
5/24 6/10 8/21 8/22 8/23 9/6 17/14
17/24 17/25 18/7 18/10 18/11 18/18
18/25 19/6 19/7 19/10 19/13 19/24 21/18
22/10 24/9 26/20 27/8 27/25 28/22 29/4
29/13 30/15 34/25 35/12 35/12
objects [1]  35/25
obtain [6]  12/5 12/22 13/2 13/22 37/7
39/4
obtained [4]  12/14 12/15 14/2 15/12
obviously [6]  10/6 15/11 42/11 42/18
52/5 54/21
occurred [3]  32/4 33/6 38/20
occurrence [2]  32/19 33/3
occurrences [2]  30/6 33/4
occurring [1]  32/5
off [2]  26/8 39/24
office [1]  5/14
officer [5]  40/2 44/9 44/10 45/8 47/3
Oh [1]  52/24
OK [39]  6/16 2/20 7/15 8/13 8/15 9/4
14/10 15/3 15/18 16/8 16/10 24/10 24/17
27/23 29/2 29/3 29/3 33/5 33/7 33/24
37/22 40/20 40/24 41/12 42/16 43/11
43/14 44/5 44/12 44/16 45/12 47/9 47/18
50/16 52/20 54/9 54/20 55/5 55/13
on [109]
once [4]  4/23 5/2 5/12 47/2
one [25]  1/15 3/10 3/11 3/11 7/8 8/7
10/6 13/10 14/1 15/8 15/24 24/1 25/19
28/4 29/8 30/15 32/24 38/7 38/9 42/1
42/20 44/17 48/2 52/4 52/6
ones [2]  18/15 36/24
ongoing [3]  10/18 39/24 40/6
only [12]  6/11 8/16 16/20 22/7 24/5
40/25 41/2 42/14 43/15 44/21 53/18
54/16
open [2]  4/18 17/23
opinion [1]  9/7
opportunity [1]  42/11
opposed [2]  14/17 38/22
opposing [10]  5/13 5/17 35/7 36/17
36/18 36/19 42/25 43/4 43/8 46/21
or [74]
order [49]  4/4 4/7 6/10 6/10 6/19 7/4 7/9
7/11 7/12 7/12 8/2 8/2 8/5 8/6 8/7 8/8
10/8 13/21 14/5 18/6 19/3 19/7 19/7
19/17 19/18 21/20 22/8 22/13 22/15
22/18 22/24 26/22 28/19 28/19 29/1
34/15 35/24 38/5 38/8 43/24 44/24 45/5
53/20 54/10 54/16 55/3 55/4 55/6 55/12
ordered [4]  5/7 8/23 9/18 40/13
orders [2]  7/8 17/5
original [1]  22/20
Otazo [17]  7/5 11/7 18/6 19/11 19/12

21/21 22/2 22/6 22/18 23/8 26/11 28/18
29/1 34/5 37/25 38/4 38/8
Otazo-Reyes [13]  7/5 11/7 19/11 19/12
22/2 22/6 23/8 26/11 28/18 29/1 34/5
37/25 38/4
Otazo-Reyes' [4]  18/6 21/21 22/18 38/8
other [24]  3/24 4/2 6/5 7/12 8/16 9/19
10/1 10/4 10/11 10/24 12/19 13/21 18/12
18/15 21/18 43/15 44/17 45/22 50/6
50/17 50/25 51/7 53/3 53/21
others [1]  51/25
otherwise [3]  5/6 37/11 42/13
our [40]  2/20 3/4 4/2 6/2 6/3 6/17 8/17 9/7
9/16 9/17 12/3 12/9 12/17 16/17 17/3
18/7 19/13 19/24 19/24 22/9 27/7 27/25
28/4 28/22 32/3 37/4 37/12 38/23 40/3
40/21 41/17 43/15 43/22 44/21 44/25
45/6 45/13 46/2 46/12 47/14 47/15
out [13]  3/23 9/21 12/8 28/19 28/19
28/20 31/25 34/4 36/24 38/11 39/9 43/13
47/7
outrageous [1]  3/21
outside [3]  9/16 10/21 35/22
outstanding [2]  6/4 16/21
over [5]  9/17 18/4 19/20 21/8 50/23
overarching [2]  20/12 26/18
overbreadth [2]  25/4 51/3
overbroad [8]  4/16 20/4 51/8 54/6
overruled [8]  5/11 5/12 5/20 5/24 5/25
5/25 6/11 38/17
overstate [1]  17/10
own [1]  11/22
owner [1]  13/1
owner's [1]  25/15
ownership [1]  12/6
owns [1]  11/24

## P

P.A [1]  1/14
page [21]  4/15 7/21 17/17 17/20 19/18
19/21 19/23 20/2 21/19 21/19 22/3 25/9
25/13 25/17 25/20 26/25 31/5 34/8 34/17
36/7 52/14
pages [4]  1/8 9/1 47/24 52/4
paid [5]  44/24 45/4 52/12 53/1 53/5
papers [3]  18/13 24/21 49/1
paragraph [5]  8/1 8/2 20/2 20/9 21/8
parameters [1]  27/24
part [10]  14/21 16/17 16/18 16/19 18/8
21/7 21/7 31/4 32/24 50/7
parte [10]  25/5 28/12 30/3 30/24 31/8
48/14 49/21 52/2 52/3 53/11
particular [3]  4/14 10/20 21/10
particularly [1]  36/1
particulars [1]  37/1
parties [7]  9/20 16/19 16/23 21/23 36/4
38/3 50/7
parties' [1]  54/9
Partner [3]  1/4 1/5 12/9
party [2]  35/24 38/10
Pause [4]  7/19 15/23 16/9 42/22
paycheck [1]  50/5
payments [3]  44/19 49/24 53/4
penalty [1]  41/25
pendency [1]  39/18
pending [8]  13/5 13/6 13/7 13/9 25/10
25/14 26/4 38/6
people [6]  28/7 28/7 31/15 32/25 46/8
48/2
percent [5]  12/1 12/5 13/23 13/24 15/12

performance [1]  49/8
period [27]  7/10 7/24 19/8 14/10 18/1
20/15 20/24 20/25 20/25 21/2 21/4 24/18
28/11 29/15 30/18 30/21 38/13 38/19
38/21 39/16 41/1 41/4 41/12 46/7 48/20
51/4 54/7
periods [1]  42/9
permissible [2]  34/11 35/5
permitted [1]  35/21
permutation [1]  48/18
person [1]  47/2
personnel [1]  51/8
persons [2]  25/12 31/11
petition [1]  22/20
petitioner [4]  1/13 2/8 41/5 41/10
petitioner's [1]  41/3
PETRUS [8]  1/4 1/4 2/3 2/8 12/9 16/18
23/21 23/21
Petrus' [1]  7/24
Petrus's [6]  7/22 13/13 16/19 20/10
20/16 34/18
phone [1]  10/3
picked [7]  14/17 14/17 14/19 29/20
29/21 29/23 29/24
picking [1]  29/19
picture [5]  3/19 24/2 24/8 26/17 37/24
piece [1]  21/3
place [3]  19/16 21/5 37/16
placing [1]  12/18
plain [1]  5/10
plaintiff [2]  1/6 2/21
plan [8]  12/24 13/4 15/14 37/9 37/11
37/14 39/1 39/5
plant [3]  43/24 44/6 51/20
planted [2]  44/5 44/7
podium [1]  3/1
point [15]  3/24 4/2 9/9 9/11 16/2 22/7
22/16 26/8 31/1 47/19 48/2 48/5 48/16
53/9 54/1
pointed [1]  34/4
points [1]  22/1
position [8]  5/13 9/17 28/16 38/23 44/21
50/12 50/14 52/6
possibility [1]  4/18
possible [1]  48/18
possibly [1]  40/9
post [1]  39/16
potential [1]  39/24
potentially [1]  37/15
POYER [3]  1/13 2/6 17/18
predicate [1]  32/7
prefer [1]  25/15
premature [1]  11/1
prepare [1]  6/1
prepared [2]  19/12 42/9
present [5]  14/24 15/1 30/2 31/2 33/19
pretty [1]  31/25
previous [6]  4/4 6/3 14/8 34/2 35/3 52/9
previously [4]  4/25 44/12 44/14
price [1]  14/3
prices [1]  14/5
prior [4]  17/18 18/7 19/13 27/3
private [3]  11/17 11/17 13/1
privilege [24]  3/14 3/16 9/20 9/22 9/23
10/5 10/12 10/16 10/20 10/23 16/22
18/11 18/19 39/17 39/21 40/11 41/13
41/15 41/18 41/19 41/24 42/9 43/7 54/13
privileged [1]  9/25
privileges [2]  9/24 10/9
probably [1]  50/19

**P**

problem [6]  5/22 9/23 10/6 10/14 28/2
 41/12
problems [1]  29/10
procedural [1]  24/12
procedure [3]  35/6 35/22 52/8
Procedure' [1]  34/12
procedures [1]  35/24
proceed [1]  16/11
proceeding [4]  23/5 23/6 33/17 53/14
proceedings [12]  2/2 5/5 9/8 25/10 29/8
 30/7 37/2 48/8 52/20 52/21 53/8 53/11
process [2]  17/13 42/10
produce [11]  4/3 4/20 5/3 5/21 9/14 10/3
 29/3 29/9 29/9 37/19 41/2
produced [7]  7/1 9/14 10/7 18/4 18/19
 24/14 30/8 30/13 41/19 41/19 41/20 43/1
 47/21 49/17
production [6]  6/16 16/1 18/5 20/4
 27/12 30/9 30/12 32/6 41/21 41/21 54/22
professionalism [1]  21/24
progress [1]  2/20
prohibit [1]  34/25
proper [1]  53/25
properly [1]  22/25
property [2]  14/4 14/7
proportional [1]  34/18
proportionality [4]  25/4 34/20 35/4 35/12
propose [1]  6/4
proposed [3]  30/5 31/6 33/14
proposing [1]  28/2
proposition [1]  40/8
protective [2]  53/20 54/10
protects [1]  40/4
public [1]  50/19
publicly [2]  12/7 14/3
pull [2]  2/16 2/19
pulled [1]  17/7
purchase [3]  11/13 11/25 55/12
purchased [2]  11/22 11/22
purposes [1]  25/3
Pursuant [1]  22/3
put [6]  6/4 28/7 28/7 31/15 36/25 55/3

**Q**

quality [1]  11/14
quarrel [1]  50/18
quarters [1]  14/8
quash [6]  22/21 27/10 27/14 27/21 34/7
 34/16
quashed [1]  34/14
question [4]  24/20 45/19 47/8 47/20
quickly [1]  17/7
quote [3]  5/3 5/4 36/17
quoted [2]  19/19 26/25
quotes [1]  3/23
quoting [2]  17/19 19/22

**R**

raise [4]  35/7 35/8 38/4 42/4
raised [5]  18/20 18/22 30/16 38/7 52/16
raising [2]  22/25
rather [1]  42/7
RE [1]  1/3
reach [1]  21/25
read [5]  3/23 31/4 31/4 31/5 52/22
reading [4]  15/21 16/17 17/20 38/1
reads [2]  43/17 44/18
ready [1]  9/14
real [2]  11/14 31/2

reality [1]  13/1
really [4]  9/2 29/16 30/17 37/2
reason [8]  12/23 13/15 15/5 15/6 22/7
 24/21 30/19 39/2
reasonable [5]  29/21 30/5 38/12 39/13
 51/15
reasonably [2]  36/2 36/11
reasoned [1]  21/22
reasons [1]  34/21
recall [2]  18/5 28/20
receipts [1]  30/10
receive [1]  46/11
received [2]  6/16 6/17
receiving [2]  44/22 47/12
recent [2]  30/5 38/19
recognizing [1]  10/22
Recommendation [1]  19/9
Recommendations [1]  19/8
record [2]  2/5 42/2 42/3 55/7
recording [1]  1/10 55/21
records [2]  24/12 51/5
refer [1]  27/5
reference [1]  32/21
referred [2]  22/5 23/4
regard [5]  20/6 25/11 31/9 48/12 52/12
regarding [14]  24/6 26/6 29/8 34/21
 40/15 41/16 43/17 43/19 44/18 45/16
 45/20 47/21 49/7 49/16
rejected [2]  34/19 34/21
related [2]  25/9 28/5
Relatedly [1]  20/3
relates [1]  44/17
relating [1]  16/22
relation [1]  23/4
relationship [2]  50/7 53/22
relevance [19]  3/13 3/20 4/7 4/13 5/9
 5/10 6/10 22/16 23/13 25/4 34/20 35/4
 35/12 35/20 35/25 36/1 38/7 38/10 38/16
relevant [20]  7/10 7/24 8/4 9/7 9/15 11/9
 15/16 20/16 27/2 34/18 36/10 38/21 41/4
 45/2 45/14 45/15 46/7 46/20 47/1 53/13
relief [2]  40/25 41/8
remaining [2]  16/20 16/21
remains [1]  42/18
Remind [1]  8/5
reminded [1]  36/4
remuneration [2]  52/18 52/25
renew [1]  38/16
renewal [1]  49/10
repeat [2]  40/14 45/18
report [12]  2/17 4/24 7/14 15/22 15/25
 16/16 17/4 19/8 19/9 19/19 25/25 42/21
Reporter [1]  1/23 55/24
reports [1]  6/1
representation [4]  40/2 42/25 44/2 44/3
representative [4]  28/23 34/9 34/13 46/3
representatives [1]  12/18
request [29]  4/6 4/14 4/22 13/13 13/19
 20/10 21/10 21/11 22/9 22/9 24/4 24/9
 24/10 26/19 26/19 27/12 27/24 29/17
 34/18 36/15 38/13 43/3 43/16 43/16
 43/17 48/19 51/2 52/15 52/23
request-by [1]  22/9
requested [3]  20/20 23/2 48/17
requesting [1]  43/9
requests [22]  4/18 6/24 7/22 8/3 8/25
 19/6 19/10 19/25 20/4 20/18 20/21 21/14
 23/1 23/4 26/19 27/1 27/23 28/23 42/15
 42/17 48/18 50/25
required [1]  44/4

requiring [1]  34/12
reserve [2]  54/17 54/20
reserving [1]  54/13
resigned [2]  50/8 50/10
resolutions [3]  26/6 31/20 52/15
resolve [3]  6/12 16/23 18/22
resort [1]  16/24
respect [4]  23/13 38/6 38/18 40/4
respectfully [5]  3/11 5/17 35/16 35/19
 36/23
respond [1]  47/18
respondent [4]  1/19 3/12 38/1 41/2
respondents' [1]  14/16
responds [1]  4/16
response [1]  8/21
responses [7]  16/21 17/24 19/10 19/14
 22/10 27/7 28/23
responsive [7]  4/3 4/22 15/15 36/12
 45/14 48/21 50/24
review [3]  19/16 40/1 43/9
reviewed [1]  47/23
reward [1]  5/19
rewrite [1]  27/22
Reyes [13]  7/5 11/7 19/11 19/12 22/2
 22/6 23/8 26/11 28/18 29/1 34/5 37/25
 38/4
Reyes' [4]  18/6 21/21 22/18 38/8
rid [1]  27/21
right [52]  3/3 4/7 4/14 8/11 10/12 11/23
 12/10 13/8 18/16 20/18 21/15 21/17 24/4
 25/4 25/6 25/16 25/19 25/23 26/2 27/15
 27/16 27/17 27/22 29/12 30/9 30/12
 30/14 32/19 33/1 33/3 40/24 44/11
 48/8 48/20 49/8 49/12 49/19 50/4 50/6
 50/9 50/13 50/24 51/11 51/12 51/23
 52/11 52/12 52/21 53/3 53/9 53/10
risk [2]  5/18 5/19
road [1]  54/24
role [1]  49/8
route [1]  33/4
RPR [2]  1/23 55/23
rule [6]  3/17 19/3 19/5 26/2 27/12 27/17
ruled [4]  4/9 15/17 19/6 36/20
rules [7]  22/4 34/12 35/6 35/22 36/4
 36/14 36/14
ruling [5]  19/21 20/8 21/5 21/13 41/10
rulings [2]  24/15 55/3

**S**

safe [1]  40/15
said [35]  8/10 9/4 10/12 11/18 12/12
 13/22 16/4 17/9 17/11 17/11 17/19 17/21
 18/21 20/20 23/20 23/21 24/4 24/11
 24/24 28/24 29/1 29/2 29/13 29/14 29/20
 31/16 31/16 37/6 37/13 39/20 39/24 42/1
 46/23 52/14 52/19
sake [1]  32/21
salary [3]  44/22 52/8 52/9
same [10]  5/2 8/1 8/2 9/11 23/17 23/19
 34/20 43/3 46/16 53/5
sample [1]  43/10
sanctions [1]  6/3
say [34]  5/20 8/23 11/22 13/15 15/7 15/9
 15/10 20/24 22/24 24/21 25/21 25/24
 26/9 27/5 28/12 30/11 31/7 31/17 32/18
 34/23 35/7 36/1 36/2 36/19 36/19 37/3
 37/17 40/3 40/12 40/15 46/11 46/13
 48/13 52/3
saying [19]  4/24 5/2 6/10 6/23 6/23 7/12
 9/7 9/12 15/15 21/1 26/13 28/1 33/12

**S**

saying... [6]  35/21 36/13 36/17 37/18
37/18 37/19
says [29]  5/13 7/22 8/1 8/2 10/3 10/17
12/13 14/20 14/22 15/1 15/6 16/19 20/2
20/9 20/15 20/24 21/6 21/15 21/21 25/17
26/24 27/4 29/2 31/9 34/17 39/23 49/1
52/3 52/4
scope [14]  4/6 7/5 20/13 21/9 22/12
24/15 26/2 26/17 30/14 32/6 34/11 35/5
35/22 49/13
second [5]  7/16 8/7 21/20 39/11 47/25
Section [2]  22/3 26/1
see [16]  4/21 9/16 17/13 27/24 29/9 37/5
37/12 37/13 37/13 37/20 39/21 39/22
42/23 45/2 54/1 54/22
seeing [1]  31/12
seek [3]  20/4 34/10 34/25
seeking [1]  3/9
seems [1]  51/8
seen [3]  8/19 42/18 47/6
selection [1]  52/7
sell [3]  11/13 11/14 11/14
senior [1]  52/7
sentence [1]  27/3
separate [1]  3/10
September [14]  5/3 6/25 12/12 12/13
12/22 28/3 28/8 30/18 31/23 32/5 33/2
33/13 41/9 50/4
served [5]  27/10 27/11 27/12 33/22
33/23
servers [1]  49/17
service [1]  33/22
set [5]  2/15 19/9 19/13 36/24 54/23
several [1]  14/13
share [1]  31/8
shareholder [12]  13/17 13/17 25/12
25/14 28/9 31/10 31/14 31/24 44/1 48/23
50/21 52/17
shareholders [3]  12/8 25/16 25/18
shareholding [1]  13/24
shares [12]  11/25 12/2 12/10 12/15
12/22 13/22 14/6 28/6 31/14 31/21 31/23
33/2
she [41]  5/13 7/10 7/22 8/1 8/2 12/12
12/13 19/12 19/24 20/2 20/9 20/15 20/24
20/24 21/6 21/13 21/15 21/18 21/21
22/10 22/19 22/20 22/24 23/2 23/11
26/24 27/4 27/6 27/19 27/19 28/17 29/2
29/2 29/11 34/6 34/8 34/16 34/21 36/19
36/20 46/23
she's [4]  4/7 4/9 21/1 21/16
shooting [1]  13/13
shortly [1]  33/22
should [19]  5/16 10/7 15/16 21/22 24/6
27/24 30/16 30/17 41/6 41/18 41/20
41/21 50/1 50/6 51/10 53/18
shouldn't [4]  4/1 15/6 15/9 35/21
show [2]  49/16 54/2
showed [1]  49/9
showing [1]  54/4
side [2]  33/15 38/18
similar [1]  11/18
simply [4]  4/11 4/13 5/9 53/24
since [4]  2/20 12/17 18/2 32/2
situation [1]  50/22
size [2]  5/18 43/10
so [126]
SOF [14]  11/23 11/23 11/24 11/25 12/4
12/15 13/12 28/4 31/12 31/18 33/7 43/25

50/21 52/17
SOF106 [14]  11/23 11/23 11/24 11/25
12/4 12/15 13/12 28/4 31/12 31/18 33/7
43/25 50/21 52/17
solely [1]  23/4
solution [1]  51/15
some [21]  2/20 4/10 4/18 4/18 9/20
10/11 12/20 13/11 13/21 13/24 19/20
29/4 38/4 40/10 41/23 42/1 43/10 45/5
51/22 53/24 54/15
somebody [2]  3/3 24/5
someone [2]  39/23 39/23
something [12]  4/10 5/15 12/1 13/17
14/24 25/25 29/6 29/20 29/22 30/25
33/23 48/10
somewhere [1]  31/17
sorry [2]  44/3 44/18
sought [1]  36/2
South [1]  39/19
Southeast [1]  1/15
SOUTHERN [1]  1/1
special [4]  13/14 13/19 23/5 52/16
specific [21]  4/5 8/19 17/14 17/21 17/25
18/25 19/6 21/16 22/1 22/9 23/3 24/9
24/17 26/19 27/24 27/25 29/16 35/8 35/8
35/12 42/15
specifically [5]  7/22 22/24 23/1 35/13
37/13
specifics [2]  24/12 29/16
specify [1]  21/11
spend [2]  5/23 39/3
spending [1]  38/25
spirit [2]  8/22 21/24
squeeze [1]  12/8
stage [2]  17/13 37/23
stake [3]  37/8 37/8 39/5
stand [2]  3/1 55/12
standard [1]  48/12
start [2]  3/19 25/21
started [4]  11/21 11/25 12/22 50/10
starting [2]  17/17 34/2
Starwood [62]
Starwood's [1]  16/22
Starwood-related [1]  28/5
stated [4]  3/23 3/25 5/7 55/11
statement [4]  5/6 7/3 7/9 55/11
states [3]  1/1 1/11 34/8
stating [1]  14/4
status [11]  2/17 4/24 6/1 7/13 15/22
15/25 16/16 17/4 19/19 25/25 42/20
statutory [1]  34/6
stay [1]  3/5
step [1]  47/25
Sternlicht [2]  6/7 11/19
still [8]  6/3 9/21 13/7 26/1 43/6 46/4
46/12 47/12
stock [3]  12/5 14/3 14/5
stop [1]  50/4
structure [1]  44/19
stuff [10]  6/2 10/7 24/24 25/5 40/8
48/23 49/6 49/14 49/17 49/24
subject [10]  7/23 7/24 20/11 20/15
20/21 40/9 48/7 53/20 54/9
submit [1]  36/23
subpoena [14]  6/18 6/18 6/20 13/6 14/20
14/21 14/22 14/22 27/11 27/13 27/22
37/24 38/17 38/18
subpoenaed [1]  28/5
subpoenas [8]  22/21 23/8 23/9 34/7 34/9
34/13 40/13 40/16

substantive [5]  16/25 18/12 21/4 30/8
30/13
such [4]  10/12 12/8 14/2 40/6
sufficient [4]  28/11 28/13 36/18 51/6
sufficiently [1]  10/13
suggesting [1]  41/5
supervisory [9]  44/2 44/7 45/25 48/2
48/6 48/16 49/15 52/5 52/11
supplemental [1]  54/22
support [1]  46/15
suppose [1]  10/25
supposed [2]  45/23 53/10
supposedly [3]  9/25 29/23 31/18
Sure [5]  3/6 7/18 29/7 39/19 47/20
surgical [3]  17/25 18/17 23/23
surgically [1]  18/10
surprise [1]  17/1
surprised [1]  17/6
sustain [2]  38/10 54/5
sweetheart [1]  45/5
sworn [1]  5/6
system [1]  40/3

**T**

table [3]  3/5 39/25 45/5
tackle [1]  42/12
tactics [2]  5/18 12/4
tailored [1]  18/19
take [6]  3/10 4/12 40/2 43/24 44/24 45/5
taken [6]  25/11 25/15 31/10 36/21 37/16
43/25
taking [4]  32/11 38/24 39/3 42/25
talk [14]  11/1 16/24 18/2 19/2 21/3 25/9
25/13 30/15 32/18 37/14 37/15 46/25
46/25 52/20
talked [5]  18/12 29/1 40/8 42/23 49/21
talking [13]  15/13 18/8 19/3 23/23 25/21
25/23 31/17 39/14 43/1 49/20 51/4 52/10
52/21
talks [1]  40/5
tell [3]  2/22 6/8 6/12
telling [2]  51/10 53/17
temporal [1]  7/5
tens [1]  8/25
terms [4]  7/23 20/11 47/20 49/12
testimony [1]  34/10
tethered [2]  30/5 31/7
than [16]  4/10 14/5 23/23 24/11 24/11
24/17 26/3 28/9 28/11 28/13 32/16 36/18
38/12 46/1 47/10 52/9
thank [10]  3/8 3/24 16/13 34/1 54/25
55/1 55/2 55/8 55/9 55/14
that [427]
that's [28]  4/15 9/17 9/17 10/17 15/10
19/15 19/23 21/3 24/13 27/3 30/2 30/2
31/2 31/2 32/23 33/2 33/16 33/17 36/18
44/11 44/19 46/24 47/7 48/5 50/24 53/1
54/20 55/13
their [35]  5/17 9/25 10/1 11/11 11/16
14/4 15/12 16/18 20/7 20/21 21/1 25/5
25/7 27/22 28/6 28/6 28/12 30/24 31/5
31/8 31/14 32/16 32/23 33/9 33/18 33/19
35/9 35/9 35/15 36/19 39/20 51/19 53/3
53/11 53/13
theirs [1]  38/25
them [35]  3/10 3/15 4/18 4/19 4/25 5/1
5/19 6/11 9/15 10/5 12/6 12/8 13/10
13/10 13/12 13/20 14/6 20/13 22/11
24/10 24/22 27/8 27/9 27/14 27/22 29/9
29/21 31/15 37/19 37/20 42/11 43/10

## T

them... [3]  47/7 48/13 53/9
themselves [1]  14/9
then [42]  5/14 10/4 12/6 13/18 14/5 14/6
14/10 16/24 17/15 20/9 21/25 22/18
22/20 23/11 24/18 25/17 25/20 27/5
27/13 29/9 29/13 30/16 31/15 32/15
33/11 35/14 36/9 39/17 40/8 40/24 41/23
45/13 45/24 46/5 49/4 50/5 51/2 51/13
53/23 53/23 55/5 55/6
theoretically [1]  53/18
theories [1]  41/3
theory [4]  14/16 51/19 53/3 53/14
there [71]
there's [10]  2/20 12/19 12/22 13/10 18/1
20/24 27/20 48/10 48/17 48/23
thereafter [1]  33/22
thereby [1]  34/12
therefore [5]  20/22 41/20 45/2 45/13
46/24
Thereupon [1]  1/25
these [21]  3/23 4/18 5/18 8/25 9/6 9/7
10/3 12/10 12/22 16/2 24/9 24/16 26/5
31/19 32/23 33/1 38/24 40/3 48/7 48/23
55/3
they [149]
they're [32]  5/2 5/2 6/23 7/1 9/2 9/12
9/14 9/15 10/7 10/8 10/10 13/7 13/23
15/13 18/13 23/24 25/24 26/1 28/2 29/6
30/11 30/12 33/12 35/21 36/13 36/15
37/19 48/8 49/20 51/16 52/10 53/5
they've [2]  15/20 24/13
thing [9]  8/16 11/18 15/24 17/20 33/25
35/8 35/8 37/17 50/17
things [17]  3/16 3/17 11/15 12/18 13/13
13/21 14/2 17/14 18/17 24/13 31/16
31/18 32/4 38/14 48/11 50/5 54/16
think [94]
thinking [1]  28/17
thinks [1]  6/13
third [5]  1/15 9/10 23/16 39/11 40/18
this [96]
those [41]  3/15 7/1 8/4 8/23 9/4 9/4 9/21
10/9 11/2 18/22 19/11 23/25 23/25 24/15
26/20 27/2 27/2 27/3 30/3 30/7 31/21
31/23 35/11 39/14 39/19 41/18 41/24
42/17 42/24 43/5 43/5 46/5 46/16 47/5
47/16 48/15 48/20 49/17 49/19 52/19
52/21
though [7]  6/15 7/4 32/1 46/14 48/17
49/7 54/5
thought [1]  17/4 29/11
thousand [1]  10/13
thousands [1]  8/25
three [18]  13/10 14/14 23/21 23/22
23/25 25/9 25/18 26/5 27/3 29/22 30/20
31/19 32/23 33/4 39/10 48/1 48/7 48/14
three-month [1]  30/20
threshold [2]  12/5 15/12
threw [1]  30/10
through [21]  2/25 4/24 10/11 10/25 11/2
11/3 11/7 14/24 15/1 17/20 30/18 38/1
41/2 41/6 41/10 42/20 43/6 43/9 46/12
54/8 54/13
throw [1]  37/10
thus [2]  5/18 14/8
time [69]
times [3]  20/6 25/1 26/14
title [1]  19/7
today [1]  30/16

## U

today's [1]  3/9
together [1]  21/23
told [2]  3/15 10/2
tons [1]  47/24
too [6]  18/25 24/19 24/22 41/25 42/3
55/7
took [1]  35/10
top [1]  15/4
topics [1]  28/24
TORRES [1]  1/11
total [1]  18/5
touching [1]  52/23
transaction [4]  32/19 33/3 33/4 54/1
transactions [2]  30/6 43/2
TRANSCRIBED [2]  1/10 1/23
transcript [3]  29/3 38/2 55/12
transcription [1]  55/20
transcripts [1]  17/7
trial [1]  36/6
tried [1]  5/18
trouble [1]  39/3
true [2]  17/6 40/16
try [1]  17/10
trying [4]  12/5 32/21 38/15 47/7
turn [1]  2/21
two [13]  13/12 16/16 16/20 17/9 24/1
25/18 29/24 38/9 42/1 42/14 42/14 43/15
46/15
type [1]  20/22

## U

U.S.C [1]  22/3
unable [1]  21/25
under [11]  13/18 19/23 20/14 20/23
21/15 23/1 27/16 34/11 35/6 45/4 53/17
undergoing [1]  52/7
underlying [3]  5/5 9/8 30/7
underscore [1]  31/1
understand [7]  4/16 28/1 32/12 32/21
37/3 47/24 48/12
understanding [2]  9/13 47/14
understands [1]  5/14
understatement [1]  17/1
Understood [1]  42/6
undisclosed [1]  46/3
undue [1]  21/12
unduly [3]  20/1 20/22 21/14
unidentified [1]  20/6
unilaterally [1]  54/23
UNITED [1]  1/1 1/11
unjustified [2]  13/11 44/22
unless [2]  11/1 17/21
unnecessary [1]  42/4
unreasonable [3]  4/19 23/1 53/4
until [6]  14/12 16/2 28/8 28/9 31/14
31/24
unusual [1]  53/4
up [13]  2/16 2/19 12/25 13/23 15/20
16/2 17/7 33/2 33/8 33/10 49/9 49/15
49/16
uplift [1]  14/7
uplifts [1]  14/7
upon [7]  21/10 38/8 41/3 44/22 52/22
52/23 53/25
us [6]  9/21 12/25 17/24 22/11 30/10
47/11
used [1]  50/20
utterly [1]  9/3

## V

vacate [8]  19/15 22/9 22/19 23/2 26/18
27/10 27/21 34/5
valuation [1]  14/7
value [2]  14/4 32/13
various [4]  12/4 12/18 14/2 16/22
verses [1]  27/23
versus [1]  41/9
very [7]  8/19 11/18 18/10 35/2 41/5
50/19 55/2
via [5]  12/4 12/4 43/24 45/5 54/15
view [2]  8/17 41/17
viewed [1]  38/5
violate [2]  22/14 47/15
violated [1]  17/4
violation [3]  10/8 18/1 46/16
Viscius [10]  43/18 43/21 44/19 45/3 48/1
48/15 48/21 52/3 52/6 52/18
vote [29]  15/8 24/5 24/6 24/6 24/7 24/7
24/17 24/20 26/8 28/12 29/22 30/19
30/20 30/22 30/23 32/19 32/22 32/23
33/1 33/6 33/9 33/13 33/16 33/17 38/20
48/7 48/15 51/24 52/1
voted [4]  13/15 13/19 24/7 52/16
votes [15]  15/8 23/21 23/22 23/25 23/25
25/18 26/6 27/3 30/6 31/19 32/23 33/5
37/8 48/14 51/22
voting [5]  12/15 13/19 24/11 24/13 24/13

## W

waiting [1]  2/14
waived [3]  10/10 41/18 41/24
waiver [1]  42/8
want [25]  8/20 9/2 9/14 12/23 12/23
15/24 17/10 24/19 24/22 30/11 33/24
35/18 35/19 36/13 37/1 37/13 37/13
37/20 40/14 41/14 45/2 47/18 48/9 48/25
55/3
wanted [3]  21/4 35/11 37/5
wants [1]  41/2
was [132]
wasn't [7]  26/19 29/16 30/1 33/13 48/15
50/22 52/5
way [7]  3/24 4/21 6/11 24/7 24/7 24/15
43/9
ways [1]  14/1
we [139]
we'd [2]  48/10 48/11
we'll [4]  29/9 38/15 54/20 54/22
we're [26]  4/23 5/13 8/21 9/4 9/10 9/19
10/11 10/19 14/13 18/25 23/23 24/3 24/4
25/23 27/23 33/3 36/9 36/11 36/23 37/12
39/19 39/23 40/9 47/7 48/9 51/4
we've [7]  6/24 8/19 16/1 25/1 28/3 45/3
45/15
wearing [1]  46/15
week [4]  18/20 18/23 28/19 55/5
weigh [1]  22/25
weight [1]  45/21
well [13]  6/15 16/7 21/22 24/17 25/25
29/3 33/7 35/9 35/20 36/21 41/15 49/25
50/3
well-reasoned [1]  21/22
well-taken [1]  36/21
went [3]  34/23 39/5 39/6
were [37]  2/2 9/25 13/5 13/15 13/21 17/9
17/12 18/3 18/22 18/25 19/3 19/11 19/22
19/25 20/17 21/14 22/25 23/1 23/8 25/18
26/20 27/8 27/10 27/11 27/12 31/18
31/21 31/23 41/16 43/1 43/1 43/2 43/25

were... [4]  43/25 48/1 49/16 52/16
weren't [2]  41/19 42/24
what [107]
what's [2]  17/13 17/14
whatever [5]  9/1 15/15 30/1 32/20 40/7
when [22]  19/12 22/9 22/17 25/5 25/23
27/4 28/4 29/1 29/2 30/22 31/21 32/9
33/9 35/18 35/24 36/7 39/8 39/20 45/7
48/1 52/19 54/24
where [13]  5/13 9/6 11/5 15/13 19/22
20/9 25/20 33/8 40/11 44/5 44/6 54/15
54/22
whether [4]  18/13 19/25 20/17 37/12
which [56]
while [2]  47/14 48/21
whim [1]  13/3
white [3]  1/19 6/9 6/10
whitecase.com [1]  1/21
who [4]  28/18 33/19 39/3 49/11
whole [5]  8/3 17/20 20/18 27/1 27/4
why [20]  6/9 6/13 11/7 11/8 17/24 21/11
22/14 23/18 23/19 30/20 31/4 31/4 31/6
32/15 36/1 36/2 36/10 38/21 45/25 51/14
will [17]  3/4 10/5 11/3 12/6 12/8 32/8
35/20 36/2 37/3 40/12 40/25 41/4 41/7
42/8 42/11 54/7 55/5
willy [1]  37/9
willy-nilly [1]  37/9
withheld [2]  41/17 46/19
within [4]  30/14 41/20 45/14 48/21
without [7]  13/4 16/23 32/21 37/9 37/11
52/7 54/23
won't [4]  12/7 42/5 42/8 54/23
word [1]  33/24
worded [1]  4/22
words [7]  4/2 6/16 45/22 50/6 51/7 53/3
53/21
work [8]  21/23 36/14 36/14 43/13 49/5
49/23 49/24 53/16
working [11]  3/3 3/4 9/21 10/11 10/25
11/2 43/6 46/12 50/4 50/11 54/13
world [2]  13/3 37/7
worst [1]  5/20
worth [2]  4/14 5/9
would [46]  4/12 4/12 4/14 5/8 6/4 6/6 6/6
6/6 6/8 7/16 10/9 11/2 14/6 14/6 15/19
17/13 26/3 26/8 28/24 28/24 29/13 29/14
32/3 32/6 32/7 41/16 41/17 41/23 42/3
42/7 45/14 45/16 45/20 46/5 46/17 47/6
47/15 47/16 48/20 49/22 49/22 51/4
53/19 53/23 54/17 55/11
wouldn't [4]  38/21 46/14 51/5 51/14
written [3]  4/6 6/5 14/20
wrong [1]  33/12
wrote [1]  15/22

X
XYZ [1]  52/8

Y
year [1]  37/4
years [1]  29/22
yes [13]  7/7 8/14 15/21 23/10 27/18 29/5
34/1 41/15 42/13 44/14 46/9 46/23 47/22
yet [3]  9/18 15/12 43/12
you [107]
you'd [1]  54/24
you're [10]  8/11 15/11 23/7 23/16 30/9
30/10 32/6 32/8 46/22 51/10

you've [2]  4/20 4/20
your [71]